## Case No. 8,290.

LEVI et al. v. NEW ORLEANS MUT. INS. ASS'N. SAME v. HOME MUT. INS. CO. SAME v. UNION INS. CO.

[2 Woods, 63.][1]

Circuit Court, D. Louisiana. Nov. Term, 1874.

MARINE INSURANCE—LOSS — NEGLIGENCE OF MASTER—MISCONDUCT OF MASTER AND OFFICERS—LIABILITY OF INSURANCE COMPANY — EXPRESS WARRANTY — TOTAL LOSS — PAYMENT OF FULL SUM INSURED.

1. Mere carelessness, negligence or unskillfulness of the master and officers of a boat do not relieve the insurance companies from liability to pay a loss occasioned thereby, unless it is so expressly stipulated.

2. It is otherwise when the master and officers of the boat are guilty of positive misconduct.

3. Misconduct is the transgression of some established and definite rule of action, where no discretion is left except what necessity may demand.

4. Negligence, carelessness and unskillfulness are transgressions of some established but indefinite rule of action, where some discretion is necessarily left to the actor.

5. Section 3651 of the Revised Statutes of Louisiana of 1870 was intended to apply only in cases where the carelessness of the officers of a boat is so gross as to justify a criminal prosecution; in other words, to cases of misconduct.

6. A clause in a river policy of insurance, in which it was warranted and agreed by the insured that the boat should be navigated "free from any loss or damage by barratry, or by the negligence of those in charge of the boat at or before the time of any accident or disaster," relieved the insurance company from liability to pay a loss resulting from a collision occasioned by the negligence of the pilot.

[Cited in Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 26 Fed. 604.]

7. Three insurance companies insured a steamboat for $4,500 each, valued in each of the policies at $27,000. The boat was sunk by a collision. Held, that if she were a total loss, or if she were abandoned to the insurers, they were bound to pay the full sum insured.

The plaintiffs [James Levi and others] in these cases held policies of insurance issued by the defendant companies [the New Orleans Mutual Insurance Association, the

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Home Mutual Insurance Company, and the Union Mutual Insurance Company] respectively, on the hull, engine, furniture and appurtenances of the steamboat Sabine, which was lost in consequence of a collision with the steamboat Richmond. near Twelve Mile Point, a short distance above New Orleans, all within the territorial limits of the state of Louisiana, on the morning of the 11th of February, 1873. The cases, by order of the court, were consolidated and tried together.

J. Ad. Rosier, E. C. Billings, and A. de B. Hughes, for plaintiffs.

M. M. Cohen, A. Voorhies, and Henry Chiapella, for defendants.

WOODS, Circuit Judge. The execution of the policies and the fact of the loss are admitted by defendants. They defend against a recovery on several grounds.

1. Because the collision and consequent loss were caused by the carelessness, negligence and improper conduct of the master of the Sabine, and of his mariners and servants, and by their gross fault and violation of law and the rules of navigation. In the case of Shirley v. The Richmond [Case No. 12,795], I have found that the loss of the Sabine was the result of a collision with the Richmond, and that the collision was occasioned by the fault of the Sabine, in not keeping the middle or thread of the river, but running close to the left bank under Twelve Mile Point, where she encountered the Richmond, who was in her proper place. It is claimed that this fact should defeat a recovery in this case on the grounds: (a) That by the general law of insurance, the fact that the loss occurred through the fault of the officers of the boat, bars a recovery upon the policy of insurance; (b) that the Code of Louisiana bars a recovery under the like circumstances; and (c) that specially the Union Mutual Insurance Company is discharged from liability on its policy by reason of the following warranty in the policy: "Warranted free from any loss or damage occasioned by barratry. or by the negligence or misconduct of those in charge of the steamboat at or before the time of any accident or disaster."

I shall notice these grounds in their order. "It is the settled rule that negligence and carelessness are insured against, while misconduct, which is a violation of definite law, a forbidden act, is never insured against." Fland. Ins. (2d Ed.) 553; Citizens' Ins. Co. v. Marsh, 5 Wright [41 Pa. St.] 386; Johnson v. Berkshire Ins. Co., 4 Allen, 388; Phoenix Ins. Co. v. Cochran, 51 Pa. St. 148; Chandler v. Worcester Ins. Co., 3 Cush. 328; Goodman v. Harvey, 4 Adol. & E. 870. In Columbian Ins. Co. v. Lawrence, 10 Pet. [35 U. S.] 507, Judge Story says: "The next question is whether a loss by fire occasioned by the fault and negligence of the assured, their servants and agents, but without fraud or design on their part, is a loss for which the underwriter is liable. In regard to marine insurance cases, this was a question much vexed in the English and American courts. But in England the point was completely settled in Busk v. Royal Exchange Assur. Co., 2 Barn. & Ald. 82, upon the general ground that 'causa proxima, et non remota spectatur'; and therefore that a loss whose proximate cause is one of the enumerated risks in the policy is chargeable to the underwriters, although the remote cause may be traced to the negligence of the master and mariners. The same doctrine was afterwards affirmed in Walker v. Maitland, 5 Barn. & Ald. 171, and Bishop v. Pentland, 7 Barn. & C. 219, and is now deemed incontrovertibly established. The same doctrine was fully discussed and adopted by this court in the case of Patapsco Ins. Co. v. Coulter, 3 Pet. [28 U. S.] 222." See, also, St. John v. American Mut. Fire & Marine Ins. Co., 1 Duer, 371; Hynds v. Schenectady County Mut. Ins. Co., 16 Barb. 119; Gates v. Madison County Mut. Ins. Co., 1 Seld. [5 N. Y.] 469; Catlin v. Insurance Co. [Case No. 2,522]; Mathews v. Howard Ins. Co., 13 Barb. 234. These authorities establish conclusively the doctrine that mere carelessness and negligence of the master and officers of a boat do not relieve the insurance companies from liability for a loss occasioned thereby.

The question remains, were the officers of the Sabine guilty of misconduct, or of carelessness and negligence only? Misconduct is defined to be a transgression of some established and definite rule of action, where no discretion is left except what necessity may demand, as contradistinguished from negligence, carelessness and unskillfulness, which are transgressions of some established but indefinite rule of action, where some discretion is necessarily left to the actor. Citizens' Ins. Co. v. Marsh, 41 Pa. St. 386. I think no better illustration could be given of what constitutes carelessness. negligence, and unskillfulness as distinguished from misconduct, than the conduct of the pilot of the Sabine, which caused the collision by which she was lost. He failed and neglected to follow a custom of the river. well known and established. but not prescribed by any positive law. That custom was that ascending boats should run under the points near the shore, so as to avoid the current. while descending boats followed the main channel or thread of the river, so as to take advantage of the current. The neglect by the pilot of the Sabine to observe this rule resulted in the collision. But this was no misconduct; there was no willful violation of positive law. If the pilot could see along the bank of the river for a long distance, and there was no boat coming in an opposite direction, there was no positive law of the river to forbid a descending boat from running near the shore. But the fault was that he ran near shore at night, and when

rounding a point, where, if he happened to meet an ascending boat, there was danger of collision. This was negligence, carelessness, and unskillfulness, but it was not willful misconduct.

I cite two instances of misconduct taken from reported cases, which will show how far the conduct of the pilot of the Sabine falls short of misconduct. The captain of a steamer, while racing, for the purpose of making more steam, brought from the hold of the vessel a barrel of turpentine, knocked out the head and placed it so near the furnace that the fire was communicated to the wood upon which the turpentine was thrown and then to the barrel; such manner of use of turpentine being in contravention of an act of congress. This, as matter of law, was held to be misconduct, and to avoid the policy. In Chandler v. Worcester Mut. Fire Ins. Co., Shaw, C. J., puts the case of a party insured, standing by the fire, which was yet so trifling that by throwing on a cup of water which was at hand, the fire might be extinguished, and yet neglecting to do so, as a case of misconduct, which would avoid a policy. 3 Cush. 328. The case of the Sabine is not like either of the cases just mentioned. There was no willful violation of a positive law, nor was there such gross negligence as to amount to misconduct. I am of opinion, therefore, that the first ground of objection to a recovery is not well taken.

2. It is claimed that the Code of Louisiana bars a recovery against the insurance companies under the circumstances of this case. The law relied on is section 3651 of the Revised Statutes of 1870 (page 709), which declares: "Any accident except such as is impossible to be foreseen or avoided, that may happen to any steamboat from racing, carrying higher steam than may be allowed by law, running into or afoul of another boat, or that may occur whilst the captain, pilot or engineer is engaged in gambling or attending any game of chance, or hazard, or whenever an accident happens from the boat being overloaded, the owner of the boat shall be responsible for all loss or damage, and shall be barred from the recovery of freight or insurance, and the officer violating the provisions of this section shall be subject to a fine of not less than five hundred nor more than two thousand dollars, and imprisonment for not less than three months nor more than three years; and in the event of loss of life being the result of such accident, then said officers shall be adjudged guilty of manslaughter." This act was passed in 1834. Whether it is still in force has been a question raised but not decided by the supreme court of Louisiana. Caldwell v. St. Louis Perpetual Ins. Co., 1 La. Ann. 85. But considering it to be still the law, it clearly appears that it was intended only to operate in cases where the carelessness of the officers of the boat was so gross as to justify a criminal prosecution, and in cases where loss of life occurred, a prosecution for manslaughter. In other words, there must have been misconduct on the part of the officers of the boat. The whole tone and spirit of the section seems to indicate this. I have already expressed the opinion that there was no misconduct of the officers of the Sabine which resulted in the collision. I am of opinion, therefore, that this section of the Revised Statutes does not bar a recovery in these cases.

3. In the policy of the Union Mutual Insurance Company, but in neither of the others, is this stipulation: "It is also warranted and agreed by the assured, that the steamer shall be navigated in strict compliance with the provisions of any and all. acts of congress regulating or pertaining to the management of vessels propelled in whole or in part by steam, and with the rules adopted by competent authority under any such act or acts, and free from any loss or damage by barratry, or by the negligence of those in charge of the steamboat at or before the time of any accident or disaster." It is claimed for the Union Mutual Insurance Company that this warranty must have been strictly complied with or there can be no recovery against it. It is not shown by the record that the Sabine was not navigated in strict compliance with the acts of congress or with the rules adopted under such act. The fault committed by the Sabine was in the nonobservance of a rule or custom of the river. It is not shown or claimed that the loss was occasioned by barratry, and we have found that there was no willful misconduct, but only negligence in the management of the boat. But the negligence of those in charge of the boat, at or before the time of any accident or disaster, which occasions the loss, is expressly warranted against in this policy, and if that warranty is binding upon the assured, it will be a bar to a recovery. The clause in this policy, upon which the Union Mutual Insurance Company relies, is an unusual one, as counsel for the company have taken pains to show. But it is printed like all other parts of the policy in large leaded type, and it is made a distinct paragraph, and the words, "it is also agreed and warranted by the assured," with which the paragraph commences, are printed in type much larger than the body of the paragraph. The remark of the supreme court of the United States in Insurance Co. v. Slaughter, 12 Wall. [79 U. S.] 409, that "in order to avoid just cause of complaint it would be better for insurance companies to employ type large enough to arrest the attention of an interested party," can have no application to this case. We find this warranty in this policy conspicuously printed, and we cannot presume that it was inserted without the knowledge of the assured. We cannot make contracts for parties or act as their guardians to supply the want of care and vigilance in the conduct of their business. If the assured did not know that such a warranty was to be found in the

policy, it was because he did not take the trouble to read it. We find it in the policy and it is as much a part of the contract as any other, and is as binding on the parties as any other. Having found that the loss to the Sabine was occasioned by the negligence, carelessness and unskillfulness of her pilot, the case of the Union Mutual Insurance Company is fully within the express warranty, and there can be no recovery against that company. De Hahn v. Hartley, 1 Term R. 343; 1 Arn. Ins. 584. As to the other companies, the defenses which they have set up have been found to be untenable.

The question remains, therefore, what ought to be the amount of the recovery against the New Orleans Mutual Insurance Association, and against the Home Mutual Insurance Company? In the policies executed by the companies, the Sabine was valued at $27,000, and each policy was for the sum of $4,500. If the Sabine were a total loss, or if she were abandoned to the insurance companies, they must pay the full sum insured. But the Sabine was not a total loss, for she was raised and repaired. Was she abandoned? The policies of both the New Orleans Mutual Insurance Association and of the Home Mutual Insurance Company contain these clauses: "And it is agreed that in case of any loss or misfortune aforesaid, it shall be the duty of the assured to use every reasonable effort for the safeguard and recovery of the said steamboat and every part thereof, and if recovered, to cause the same to be forthwith repaired, if practicable; to the charges whereof the said insurance company will contribute in proportion as the sum herein insured bears to the agreed value herein; and in case of the neglect or refusal of the assured, or their agents or assigns, to adopt prompt and efficient measures for the safeguard and recovery thereof, then the said company shall have the election to interpose and recover said steamboat or any part thereof, and cause the same to be repaired for the account of the assured; to the charges of which the said insurance company will contribute in proportion as the sum herein insured bears to the agreed value in this policy. And in no case whatever shall the assured have the right to abandon until it is ascertained that the recovery and repairs of the said steamboat are impracticable, nor shall the assured have the right to sell the wreck or any part thereof without the written consent of said company." The Sabine was raised by a wrecking company, and after being so raised, she was libeled for salvage and sold, and her purchaser had her repaired at an expense of $3,100. These facts being established, it is clear that the insured had no right to abandon under the terms of these policies, for they had no right to abandon until it was ascertained that the recovery and repairs of the steamboat were impracticable. This was never ascertained, for it was not true, and the right to abandon did not exist.

I have examined the evidence to see whether there was in fact an abandonment, and an acceptance of the abandonment by the insurance companies. The evidence fails to satisfy me that there was a purpose to abandon, or that the insurance companies intended to waive their right under their policies, and accept the abandonment. There can, therefore, only be a recovery against the New Orleans Mutual Insurance Association and the Home Mutual Insurance Association as in case of no abandonment. The case will be referred to a master to ascertain and report from the evidence now on file the amount to be paid by each company under the terms of the policy.