DOW (ROBINSON v.). See Case No. 11,950.

DOW (UNITED STATES v.). See Case No. 14,990.

═══════

## Case No. 4,038.

### DOWDALL v. PENNSYLVANIA R. CO.

[13 Blatchf. 403.][1]

Circuit Court, E. D. New York. June 9, 1876.

EVIDENCE — ADMISSIONS OF AGENT — NEGLIGENT TOWAGE—TOTAL LOSS, EVIDENCE OF — MARKET VALUE.

1. In the trial before a jury, of an action at law to recover damages for the loss of the plaintiff's canal-boat, through the negligence of the defendant, while being towed by the defendant, the boat, which was loaded with coal, having struck the spiles of a bridge and sunk, the plaintiff, on being examined as a witness, testified, under objection, that he afterwards had a conversation with a person who was the agent of the defendant in regard to tow-boats, and he said that the boat was sunk, and that it would cost more to raise her than she was worth, and that he regarded her as a total loss: *Held*, that the evidence was competent.

[Criticised in Jennings v. Muller, Case No. 7-, 282.]

2. The statement was within the scope of his agency, there had been time for the agent to make an examination, and it is to be assumed that he had made one; nor was it a subject in relation to which it was necessary to be shown that the person speaking was an expert.

3. A party claiming a total loss of his vessel must prove either an actual total loss, or that it would cost more to raise and repair the vessel than she would be worth when repaired. The burden of proof is upon him.

4. The facts, that the boat was struck, and filled and sank to the bottom of a river in which the tide ,ebbed and flowed, and that, after the lapse of sufficient time to ascertain the facts, the agent of the party causing the injury declared to the owner that she was a total loss, and that it would cost more to repair her than she would be worth when repaired, were evidence to justify a submission of the question to the jury.

5. The fact that the boat was proved to have been subsequently seen lying in the harbor of New York, slightly repaired and lying in the mud, did not necessarily alter the result. The whole evidence was proper for the jury.

6. On the question of the actual market value of the boat at the time of her loss, it was competent evidence for the plaintiff to testify as to what he had paid for her and what he had expended upon her.

[7. Cited in Powell v. The Willie. 2 Fed. 99, to the point that the defendants were bound to possess a knowledge of the dangers of the navigation they undertook.]

Timothy C. Cronin, for plaintiff.

Charles H. Woodruff, for defendant.

HUNT, Circuit Justice. This is a motion for a new trial. on a bill of exceptions. The case was tried before a jury, in June, 1875, and resulted in the finding of a verdict for the plaintiff, for eight hundred dollars. The action was to recover damages for the loss of the canal-boat of the plaintiff [Michael Dowdall], through the negligence of the de-

───────────

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

fendant, while being towed by the defendant from the city of New Brunswick to the city of New York. The defendant has made a bill of exceptions, obtained a stay of proceedings, and now presents his case upon the motion for a new trial.

The first objection is to the admission of the evidence founded upon the statement of Mr. Jarrard. The plaintiff commenced his case by calling the master of the boat alleged to have been injured, who testified to the circumstances resulting in her striking against the spiles of the bridge, and that she went down to the bottom of the river. She was loaded with coal, and was being towed by one of the defendant's tow-boats through the Hackensack river, when the accident occurred; and it was in that river that she sank. The witness then added: "I saw Mr. Jarrard and Mr. Stevens. Mr. Jarrard is agent for the company, and Mr. Stevens superintendent. I saw Mr. Jarrard at New Brunswick. He is agent of the company in regard to tow-boats. He told me to see Mr. Stevens at Hoboken." Mr. Dowdall, the plaintiff, was then called, who testified as follows: "I had a conversation with Mr. Jarrard. He told me that the boat was sunk, and that it would cost more to raise her than she was worth, and that he regarded the boat as a total loss. I then went to see Mr. Stevens, and he sent me back to Mr. Jarrard." The admission of this evidence forms the ground of the first exception by the defendant. This objection is attempted to be sustained upon different grounds. Thus, it is said: 1st, that the statement is not of such a nature as would bind a principal, by the laws of agency; 2d, that it does not appear that it was within the personal knowledge of the agent; 3d, that it does not appear that it was within the scope of his agency; 4th, that it was not a part of the res gestae; 5th, that an admission is not competent evidence of a fact which might be proved by direct testimony; and, 6th, that this evidence became incompetent when it appeared afterwards that the boat was in fact raised and brought to New York.

It had been proved already, that one of these men, Jarrard, was the agent of the company in regard to tow-boats, and that, upon application to this agent, he referred the plaintiff to the other agent, Stevens, who was the superintendent of the company. We are to assume of these men, as of other agents of railroad companies, first, that they speak for and represent their principals within their agency; and, second, that they act in the interests of their principals—at least, that they do not intentionally favor others at the expense of their principals. Here is the case—not an uncommon one—of a man whose boat has been sunk while in the charge of the company. She goes to the bottom of the river and lies there. What is the owner to do? Shall he rush to a lawyer's office and order a suit to be commenced, or shall he

apply to the company for redress? He wisely takes the latter course. To whom shall he apply? One would say, to those agents having in charge the subject of towing boats. This accident happened in the state of New Jersey, and, from the name of the company, we may suppose that its principal place of business, and its president and secretaries, would not be found in that state. The agent in respect to towing boats, and the superintendent of the company, are found, and from one of these he is referred to the other. When he there makes application, it seems to have been already ascertained that the accident had occurred, and what were its results. We are not to assume that Mr. Jarrard, the agent of the company, would make the positive statements he did, unless he had examined into the case. We cannot suppose him thus ready to favor a stranger at the expense of his employer, unless he had ascertained that it was his duty to do so. Apparently, he had informed himself of the state of the case, as, without making further inquiries, he informed the plaintiff, as of his own knowledge, that the boat was sunk, that it would cost more to raise her than she was worth, and that he regarded her as a total loss.

I cannot think it necessary to the competency of an admission, that the party making it shall be shown to be an expert on the subject of the evidence admitted. If the case had been reversed, and Dowdall had admitted that the expense of raising would have been less than the value of the boat when raised, the evidence would have been competent. It would not have been conclusive, and he might have shown the truth in opposition to his admission, as the defendant might have done here, but, it would have been good as far as it went. The subject-matter of the admission appears to have been more within the department of the agent of the tow-boats of the company, than of any other agent or officer. It was his duty to see to this subject, and to see that, in respect to boats to be towed, the interests of the company were protected. That this boat was subsequently raised and brought to the city of New York, is a circumstance affecting the weight, and not the competency, of the evidence. I shall have occasion to refer to this subject further, in considering the objection to the charge, on the point of a constructive total loss.

The second objection also arises upon the testimony of the plaintiff, Dowdall. He says: "The value of the boat was fifteen hundred dollars. She was worth that to me." This was objected to by the defendant's counsel, and an exception taken. The witness proceeded: "I paid seven hundred dollars, and laid out three or four hundred dollars." This was also objected to, the objection was overruled, and the defendant excepted. The defendant's argument, that the actual market value of the boat at the time

of the injury furnishes the rule of damages, is certainly a sound one. What the plaintiff paid for her, or what repairs he put upon her, do not necessarily establish her value. Nevertheless, these are competent facts, as bearing upon the question of actual value. What an article will sell for is a good test of value; and what the boat sold for, when the plaintiff bought her, is one of those tests. It is not conclusive. He may have paid an extravagant price, he may have made a very good bargain, or the circumstances may now be very different. So, his expenditures upon her enter into the same view. If she was worth a certain sum when he bought her, it is not an unreasonable argument that the expenditure of $300 upon her added so much to her value. It was for the jury to determine. It was never doubted, that what the plaintiff gave for his boat or his horse or his carriage, within a short time before the injury to it, is competent evidence on the question of value. The practice on that point, at jury trials, is believed to be uniform. The statement that the boat was worth the sum stated, to him, the plaintiff, was not specially excepted to. It is quite likely, that, if attention had been called to that expression, the court would have limited the evidence to the value of the boat generally and not its value to the plaintiff. The exception was general, to the plaintiff's evidence that the boat was worth $1,500, as well as that she was worth that sum "to me."

The remaining exception is to the charge of the judge. Among other things, the jury were charged as follows: "If you hold, that, upon the proof, the plaintiff is entitled to recover, the next question is as to the amount of such recovery. On that point, I charge you, that the rule of damages is this—1. If the boat was sunk, and was totally lost in fact, the plaintiff is entitled to recover her actual value at that time. 2. If she was not actually and totally lost, but was in such a condition that the expense of raising and repairing her would exceed her value when so repaired, then the plaintiff can recover her actual value at the time of the injury." The defendant objected and excepted to the submission of the question of value to the jury, on the ground that there was no evidence of total loss or of the cost of recovery and repair. In connection with this exception, the defendant's counsel requested the court to charge the jury, that the recovery should be for nominal damages only, which request was refused.

At the trial and upon the present argument, the counsel for the defendant conceded that the law as announced by the court was correctly announced, but insisted that there were no facts found, and no competent evidence before the jury, to which such principles could be applied. If this contention is well taken, there was doubtless an error for which a new trial must be awarded. It was proven, that, after receiving the injury, the boat filled and sank to the bottom of the Hackensack river. We are not informed of the depth of the water in this river, and only know of it that it is a river in which the tide rises to the height usual in the latitude of New York, and runs with force at the point in question, and that it is one of the great highways of internal traffic. After the boat was so sunk, and after the lapse of sufficient time to procure the presence of her owner, and for him to call upon the different agents of the defendant in New Jersey, involving probably a period of several days, the jury were justified in believing that those agents made an examination of the boat, as she lay in the river. They must be supposed to be familiar with the river, with its depths, its tides, the means and expenses of raising boats, and the expense of repairing boats that had been stove and sunk. It was both their duty and their interest to ascertain the actual injuries to this boat. They had all the means of ascertaining the actual injury, and of judging of the cost of repairing her, and the jury had the right to assume that they would not adjudge and declare until they had made the necessary examination. Such agent did then and there, under these circumstances, declare to the plaintiff, that his boat was a total loss, and that it would cost more to raise and repair her than she would be worth when raised and repaired. I am of opinion that the plaintiff had a right to rely upon this declaration, and that these facts and circumstances afforded evidence to the jury on which they might find that there was a total loss of the boat. If there was such evidence, then it was for the jury to decide whether or not it was overborne by the fact of the subsequent appearance of the boat in the Hudson river. It was proven, that, a year after the accident, to wit, in the fall of 1874, a witness saw the boat in the Hudson river between 56th and 57th streets, New York, and that he saw her again in the same place, a few days before the trial, which took place in June, 1875. A piece of plank had been put on her and a piece of timber had been put in her, and she laid in this condition, in the mud. It did not appear who had removed the boat, or who had repaired her, whether, after an attempted repair, she was found to be of any value, or whether she had been again abandoned and left to rot in the mud as of no value to any one. Assuming, as the defendant's counsel is justified in doing, that it was the duty of the plaintiff to establish his case, and that, if he claimed a total loss, it was for him to establish the facts which would justify that claim, I am still of the opinion that a prima facie case was made by him, and that the case was not necessarily, and as matter of law, overthrown by proof of the subsequent condition of the boat. It left the case, upon the whole evidence, for the judgment of the jury, and I see no occasion to interfere with the decision made by it.