## RICHELIEU & O. NAV. CO. *v.* BOSTON MARINE INS. CO.

*(Circuit Court, E. D. Michigan. January 13, 1886.)*

1. MARINE INSURANCE—ACTION ON POLICY—PROTEST AS EVIDENCE.
   In an action upon a policy of marine insurance, the protest, a copy of which was served with the proofs of loss, as the basis of the plaintiff's claim for the sum insured, was held admissible on behalf of the defendant.

2. SAME—PROTEST NOT ATTACHED TO PROOFS OF LOSS.
   The fact that such protest is not actually attached to the proofs of loss is immaterial, if it is referred to and described therein so that it may be identified.

3. SAME—STATEMENT MADE BY MASTER TO NOTARY.
   Statements of the master made at the time the notary was reducing the protest to writing, explanatory of certain words used therein, are admissible as part of the *res gestæ*.

4. SAME—VESSEL BOUND BY WHAT LAW OF NAVIGATION.
   A Canadian steamer, navigating Canadian waters, between two Canadian ports, is bound to comply with the statute of Canada with respect to the navigation of her waters; and an American insurance company, carrying a policy upon such steamer, must be held to have contemplated its requirements.

5. SAME—NEGLIGENCE NOT AMOUNTING TO BARRATRY.
   In the absence of an express stipulation in the policy, the underwriter is liable for losses resulting from negligence not amounting to barratry.

6. SAME—VIOLATION OF STATUTORY OBLIGATION.

   The violation of a statutory obligation, or a proved neglect to conform to the requirements of good seamanship, followed immediately by a disaster, raises the presumption that such neglect caused or contributed to it. This rule applies as well to actions upon policies of insurance as to actions for negligence.

7. SAME—DEFECTIVE COMPASS—UNLAWFUL SPEED IN FOG.

   A steamer provided with a defective compass, while running, in violation of law, at full speed in a fog, stranded upon a well-known reef. *Held,* that the violation of law and the unseaworthiness of the steamer raised the presumption that the stranding was the consequence of negligence and unseaworthiness, and were the proximate causes thereof.

8. SAME—KNOWLEDGE OF UNDERWRITER.

   A steamer equipped with a defective compass is unseaworthy, and, so far as such unseaworthiness is a defense to the underwriter, it is immaterial whether it is known to the owner or not.

On Motion for New Trial.

This was an action upon a policy of insurance, whereby the defendant insured the steamer Spartan in the sum of $10,000 against all losses occasioned by perils of the sea, "excepting all perils, losses, misfortunes, or expenses consequent upon and arising from or caused by the following or other legally excluded causes, viz.:   Damages that may be done by the vessel hereby insured to any other vessel or property; incompetency of the master or insufficiency of the crew, or *want of ordinary care and skill in navigating said vessel,* and in loading, stowing, and securing the cargo of said vessel; rottenness, inherent defects, overloading, and *all other unseaworthiness;* theft, barratry, or robbery."   At the time of the loss, the Spartan was in the service of the Owen Sound Steam-ship Company, which had chartered her from the plaintiff in this case.   The loss occurred June 19, 1883,. while the steamer was bound upon her trip from Silver islet, upon the north shore of Lake Superior, to Owen sound, Ontario.   When she left her port of departure, the weather was fair, and the steamer took a direct course for Whitefish point by way of Passage island.   Midway between Silver islet and Passage island a dense fog arose, which continued more or less thick until the time of the stranding.   She passed Passage island in safety, and about 8 o'clock in the evening of the 18th was put upon a course which should have carried her about seventeen miles south of Caribou island. Her navigation was left in charge of the second mate, Mr. Harbottle, who remained on watch until about half-past 1 o'clock in the morning of June 19th.   Capt. McGregor, the master, had retired to his berth about 8 o'clock in the evening, after committing the charge of the vessel to Mr. Harbottle, and giving that officer the following written instructions for the navigation of the steamer: "If it continues thick at 10 o'clock P. M., keep her S. E. by E. until 3 A. M.; then keep her S. E. by E. $\frac{1}{2}$ E. small, etc.   If it clears, continue on your course S. E. by E. $\frac{1}{4}$ E."   The fog continued dense during the second mate's watch, and the steamer, under the instructions given, was run at full speed on the prescribed course, which was a quarter

of a point more southerly than usual. About half-past 1 o'clock the first mate, Mr. Waggoner, came on watch, and relieved Harbottle, the second mate. The vessel was then running at full speed. The weather was thick, and the fog dense, and so continued all night. She continued to run, at the rate of about 13 miles an hour, in a fog so dense that "you could not see anything,—you could not see the length of the boat,"—as Waggoner stated it, until about 2:20 A. M., somewhat less than an hour after the change of watch, when she stranded on Caribou island, and brought up about 400 feet from the shore. The weather was still so thick that the land could not be seen. There was no lookout maintained on the steamer, and on soundings taken, and the testimony indicated that "if the vessel had been running at half speed she might have been backed off." The defenses were that the losses were occasioned (1) by the want of ordinary care in the navigation of the vessel; (2) by her unseaworthiness in running with a defective compass. The jury returned a verdict for the defendant. The plaintiff moved for a new trial upon the grounds stated in the opinion of the court.

*F. H. Canfield,* for plaintiff.

*H. H. Swan,* for defendant.

BROWN, J. It is insisted that the court erred—

1. In admitting the protest made by the master and crew after the Spartan had been gotten off and taken to Windsor. The protest was admitted under the following circumstances: Plaintiff put in evidence the proofs of loss served upon the defendant. These proofs recited that " the said vessel, in the prosecution of a voyage, ran ashore on the north-east shore of Caribou island, and became a wreck and total loss, and was duly abandoned by her owners to the insurers, as will appear by certified copies of the protest of her master and mariners heretofore served on you herewith." We think it clear that in an action on a policy of insurance the protest is not admissible on behalf of the plaintiff. It is true there are several American cases which hold otherwise, but the weight of authority is decidedly the other way. The protest stands in the same position as any other declaration made in the interest of the party offering it. It is not so clear, however, that it may not be put in evidence by the defendant, though the better considered cases hold that it stands in the light of an ordinary admission made by an agent, which is not competent as against the principal unless it be part of the *res gestæ.* But where the protest is served with the proofs of loss, and made, in part, the basis of plaintiff's claim against the company, we think he should be held as so far making the statements his own that it should be admitted against him. It is true, a contrary ruling was made by the king's bench in *Senat* v. *Porter,* 7 Term R. 158; but, notwithstanding the positive opinion of Lord KENYON and his associates, the propriety of this decision may well be questioned. Indeed, we find it

difficult to reconcile it with *Insurance Co.* v. *Newton*, 22 Wall. 33, in which the proofs of loss consisted of affidavits giving the time, place, and circumstances of the insured's death, and the record of the finding of the jury upon the coroner's inquest. These were held admissible on behalf of the defendant. While the affidavits showed the fact of death, they also showed that the deceased committed suicide. It was held that, as they were intended for the action of the company, the latter had a right to rely upon their truth, and that, unless corrected for mistake, the insured was bound by them. "Good faith and fair dealing required that the plaintiff should be held to representations deliberately made, until it was shown that they were made under misapprehension of the facts, or in ignorance of material matters subsequently ascertained."

The fact that the protest was not attached to the proofs of loss is immaterial, for a paper referred to and described in a written instrument, so that it may be identified, is thereby made a part of the instrument the same as if it were incorporated with it. *In re Com'rs Washington Park*, 52 N. Y. 131; *Tonnele* v. *Hall*, 4 N. Y. 140.

The case of *Senat* v. *Porter* was followed by the same judge in *Christian* v. *Coombe*, 2 Esp. 490, and is usually cited by the elementary writers upon marine insurance as settling the law upon that subject. But the tendency of the American and some of the more recent English cases is to hold that, wherever a party has offered or made use of the statements of a third person in any legal proceeding as the basis of a claim against another, it may be used as an admission against him; thus, in *Brickell* v. *Hulse*, 7 Adol. & E. 454, affidavits of third persons, used by a party on motion before a judge, were held to be admissible in evidence in a subsequent action against the party so using them. The case of *Atkins* v. *Elwell*, 45 N. Y. 753, was an action brought to recover damages sustained by the plaintiffs by the fraud of the defendant on the sale of a ship to them. After the purchase, the ship was sent by the plaintiffs to San Francisco; but, encountering bad weather, she put into Rio Janeiro in distress, where a protest was made by the master before the consul. The defendant expressly denied making any representations as to her soundness, and offered in evidence the protest, as showing the statements of the master as to the soundness and condition of the ship at the time of the disaster. The court held it to be admissible. "It was a solemn instrument," said the court, "made by their agent, for their benefit, in the course of his duty. It was used by them in a matter of importance to them and others. It was used by them upon a question which was at issue in the action then upon trial, viz., the condition of a vessel at a time at which they in this action allege that she was unsound. How much weight should be given to it is not the point here. Whatever weight it had, the defendants were entitled to, as its statements, adopted by the plaintiffs, and used by them for their benefit in one instance, could not be repudiated by them in another."

See, also, 1 Phil. Ev. 449; *Patapsco Ins. Co.* v. *Southgate*, 5 Pet. 622. In *Marine Ins. Co.* v. *Stras*, 1 Munf. 408; *Patterson* v. *Insurance Co.*, 3 Har. & J. 71; and *Doherty* v. *Farris*, 2 Yerg. 73,—the protest was offered by the plaintiff, and of course was ruled out.

In the view we have taken of this question, the fact that the master was not the servant of the plaintiff, but of the Owen Sound Steamship Company, becomes immaterial, since the plaintiff, by making the protest a part of the proofs of loss, has adopted and made it its own. It is not admitted at all upon the principle of agency.

2. The fact that the words "fogs and defective compass" are not contained in the written part of the protest setting forth the facts of the disaster, but are interlined in the printed part, does not affect the admissibility of the protest; but we think it meets the objection made to the statements of the master at the time the protest was made. The witness Waggoner, in answer to the question whether, at the time the protest was made, the attention of the master was called to the fact that the compass was defective, was permitted to answer that the master said that the compass was "a little out," and that he laid the disaster solely to the compass. This testimony was objected to upon the same ground as the protest, viz., that it was the admission of an agent after the event, and not a part of the *res gestæ;* and that it was not admissible to contradict the testimony of Capt. McGregor, because his attention had not been called to it upon cross-examination. But we think it was competent, in connection with the fact of making the protest, to show that the attention of the master was called to the subject of the defective compass, and that the words "fogs and defective compass" were inserted in the protest with his knowledge. The statements were made in giving instructions to the notary with respect to the protest, which was in itself an official act, and strictly within the line of the master's duty, and hence these statements do not fall within the ruling in *Packet Co.* v. *Clough*, 20 Wall. 528, or *Insurance Co.* v. *Mahone*, 21 Wall. 152, and the numerous other cases, wherein admissions made after the event, and not in connection with the performance of any official act, were excluded. We think the admissibility of this testimony is rather controlled by the cases of *Kirkstall Brewery Co.* v. *Furness Ry. Co.*, L. R. 9 Q. B. 468; *Railroad Co.* v. *Butman*, 22 Kan. 639; *Xenia Bank* v. *Stewart*, 114 U. S. 224; S. C. 5 Sup. Ct. Rep. 845; *Morse* v. *Connecticut R. Co.*, 6 Gray, 450; *Dowdall* v. *Pennsylvania R. Co.*, 13 Blatchf. 403. In all these cases the statements related to a past transaction, but they were made in connection with an act itself within the scope of the agent's duty, and were admitted upon that ground. In this case the admission is no broader than the statement of the master upon the stand that he could account for the loss in no other way; but it shows that his attention was directed to that feature of the case at the time the protest was made, and that it was not inserted by the notary upon his own motion. Indeed, he testified that he had the words inserted

himself. Under these circumstances, it is difficult to see how the plaintiff was prejudiced by its admission. If we suppose it to have been ruled out, the testimony of the master as to the defective condition of the compass would still remain, and the general purport of the evidence would be the same, even if the testimony were technically incompetent. The plaintiff suffered no injury by its admission, and has therefore no legal cause for complaint. *Cooper* v. *Coates,* 21 Wall. 105; *Allen* v. *Blunt,* 2 Wood & M. 128.

3. Objection was also made to the admission of the Canadian statute requiring moderate speed in a fog, upon the ground that it was intended to apply only to cases of collision, and also because the statutes of Canada are not enforceable in this court. The objection is without force. The act is entitled "An act to make better provision respecting the navigation of Canadian waters;" and, while it is intended primarily to lay down certain regulations for the prevention of collisions, the provisions of the act are general, and require the observance of the regulations under all circumstances. We are cited to no authority that acts of this description, and they are universal in all maritime countries, are limited in their application. In the *Case of Kestrel,* 4 Asp. 435, the act was treated as obligatory in a proceeding to suspend the certificate of the master of a vessel for his negligence in permitting her to be stranded. The Spartan was a Canadian vessel, and was navigating Canadian waters between two Canadian ports, and was bound to comply with the laws of Canada, and the insurers must be held to have contemplated this requirement in issuing the policy. 1 Phil. Ins. Dec. 736; *Peters* v. *Warren Ins. Co.,* 14 Pet. 99, 112. So far, however, as the question of speed is concerned, the point is hardly worth discussing, as the Canadian statute is the same as our own upon the subject. Indeed, these rules of navigation are now recognized as general laws of the sea, and constituting a kind of international code. *The Scotia,* 14 Wall. 171.

4. It is further claimed that the court erred in charging the jury that, "as the Spartan was violating the statute laws of Canada in running at full speed in a dense fog, plaintiff must show affirmatively that neither the speed of the steamer nor the defects of the compass could have caused or contributed to the stranding of the steamer, and that the burden of proving a loss of this kind is upon the plaintiff. There is no presumption that the loss was caused by a peril insured against by the defendant." This charge is claimed to have been erroneous, because it puts the burden of proof upon the wrong party. There is no doubt of the correctness of the general proposition that, in the absence of a specific stipulation in the policy, the insurer is liable for losses resulting from negligence not amounting to barratry. 1 Pars. Ins. 534, note; *Waters* v. *Merchants' Louisville Ins. Co.,* 11 Pet. 213; *National Ins. Co.* v. *Webster,* 83 Ill. 470; *Fireman's Ins. Co.* v. *Powell,* 13 B. Mon. 311; *Citizens' Ins. Co.* v. *Marsh,* 41 Pa. St. 386; *Bush* v. *Royal Exch. Assur. Co.,* 2 Barn. & Ald. 73; *Walker*

v. *Maitland*, 5 Barn. & Ald. 171; *Bishop* v. *Pentland*, 7 Barn. & C. 219.

In the American cases it is broadly held that the underwriters are liable for losses occasioned by negligence. In the English cases it is discussed in a somewhat misleading manner as a question of remote and proximate cause, as if the insurer would not be liable if the negligence were the immediate cause of the loss; but we find no case holding directly that he would not be so liable. The true distinction seems to have been between cases of accidental or negligent stranding, and those wherein the stranding was one of the ordinary and expected incidents of the voyage. *Hearne* v. *Edmunds*, 1 Brod. & B. 388; *Bishop* v. *Pentland*, 7 Barn. & C. 219; *Rayner* v. *Godmond*, 5 Barn. & Ald. 225. In the latter class the insurers would not be liable.

In this case, however, there is an express exception of all perils and losses occasioned by the want of ordinary care and skill in navigation, and all unseaworthiness. In this connection we understand it to be the law that the violation of a statutory obligation, or a proved neglect to conform to the requirements of good seamanship, followed by a disaster, raises the presumption that such neglect contributed to it. This has been reiterated so many times in collision cases as to have become elementary. Lownd. Col. 88; *The Genesee Chief*, 12 How. 447, 463; *The De Soto*, 5 How. 465; *The Pennsylvania*, 19 Wall. 136; *The Fenham*, L. R. 3 P. C. 212; *The Lion*, 1 Spr. 44, 40; *The Northern Indiana*, 3 Blatchf. 92, 106; *The Leo*, 11 Blatchf. 225; *The Voorwarts & Khedive*, 5 App. Cas. 894, 900. In *Taylor* v. *Harwood*, Taney, 437, 444, the chief justice stated, in general terms, that "the omission of a known legal duty is such strong evidence of negligence and carelessness that, in every case of collision happening under such circumstances, I should hold the offending vessel as altogether at fault, unless clear and indisputable evidence established the contrary." We understand this principal to be of general application in all actions where the question of negligence is involved. Shear. & R. Neg. § 484. In *Jetter* v. *New York & H. R. R.*, 2 Keyes, 154, a charge that a street car proceeding at a rate forbidden by the city ordinances would render the company liable, because in such case the accident would be the result of their violating the city ordinances, was held to be proper, notwithstanding the decision to the contrary in *Brown* v. *Buffalo & S. L. R. R.*, 22 N. Y. 191; relied upon by the plaintiff here. See, also, *Massoth* v. *Delaware & H. C. Co.*, 64 N. Y. 524; *Langhoff* v. *Milwaukee R. Co.*, 19 Wis. 489; *Hayes* v. *Michigan Cent. R. Co.*, 111 U. S. 228; S. C. 4 Sup. Ct. Rep. 369. All the authorities are reviewed in an elaborate opinion in *Grey's Ex'r* v. *Mobile Trade Co.*, 55 Ala. 387, and the case of *Brown* v. *Railroad Co.*, 22 N. Y. 191, distinctly repudiated.

The seventh section of the Canadian statute, already referred to, provides expressly that, in case of any damage to person or property

arising from the non-observance by any vessel or raft of any of the rules prescribed in the act, "such damage shall be deemed to have been occasioned by the willful default of the person in charge of such raft, or of the deck of such vessel at the time, unless the contrary be proven or it be shown to the satisfaction of the court that the circumstances of the case rendered a departure from the rules necessary."

It is claimed, however, that this rule, enforced so often in cases of collision and in actions for negligence against carriers, should not be applied in actions upon policies of insurance, for the reason that the carrier is not exempted if his negligence contributes to the loss, notwithstanding the loss itself may be occasioned by a peril of the sea, while the insurer is liable wherever a peril of the sea contributes to the loss, though the ship may have been placed in such peril by the negligence of the insured.  If this were true as a universal proposition, the exception in the policy of perils and losses consequent upon and arising from or caused by want of ordinary care and skill, would be of little or no avail, for no matter how gross the negligence or how direct the loss consequent thereon, if a peril of the sea intervened to produce the disaster, the company would be liable.  The exception is not only of all "losses and misfortunes," but of all "perils" caused by negligence.  The inference from this is that the company would be exonerated notwithstanding the immediate loss be by a peril of the sea, if such peril arose from negligence or unseaworthiness.  It is not intended, in this connection, to impugn the authority of the numerous cases which hold that, where the negligent act has ceased to operate at the moment of the disaster, such disaster shall be referred to the peril, rather than to the negligence.  Examples of such are *Morrison* v. *Davis*, 20 Pa. St. 171; *Denny* v. *New York Cent. R. Co.*, 13 Gray, 481; *Daniels* v. *Ballantine*, 23 Ohio St. 532; *Railroad Co.* v. *Reeves*, 10 Wall. 176; *Souter* v. *Baymore*, 7 Pa. St. 415.  But where the negligent act continues to be operative up to the very instant of the loss, we find it difficult to escape the conclusion that it is a "peril" caused by negligence, and by negligence alone, even if the loss itself were to be attributed to the peril rather than to negligence.

The case of *Waters* v. *Merchants' Louisville Ins. Co.*, 11 Pet. 213, is a leading case upon the question of proximate and remote cause. The policy was general, containing no exception of this kind, and the court held the company not liable for barratry, though liable for negligence, and that a loss by fire, intentionally set by the master and the crew, was a loss by barratry.  "Such a loss," says Mr. Justice Story, "is a peril and loss attributable to the barratry as its proximate cause, as it concurs, as the efficient agent, with the element *eo instanti* when the jury is produced.  If the master or the crew should barratrously bore holes in the bottom of the vessel, and the latter should thereby be filled with water, and sink, the loss would properly be deemed a loss by barratry, and not by a peril of the sea or rivers, though the flow of the water should co-operate in producing

the sinking." This language appears to be somewhat in conflict with that used by the English courts, with respect to proximate and remote cause, in *Busk* v. *Royal Exch. Assur. Co.*, 2 Barn. & Ald. 73; *Walker* v. *Maitland*, 5 Barn. & Ald. 171, and *Bishop* v. *Pentland*, 7 Barn. & C. 219. In the subsequent case of *Insurance Co.* v. *Transportation Co.*, 12 Wall. 194, 199, it is said that, "when one of several successive causes is sufficient to produce the effect, (for example, to cause a loss,) the law will never regard an antecedent cause of that cause or the *causa causans.* In such a case, there is no doubt which cause is the proximate one, within the meaning of the maxim. But when there is no order of succession in time, when there are two concurrent causes of loss, the predominating efficient one must be regarded as the proximate when the damage done by each cannot be distinguished."

It is only within a comparatively few years that the clause exempting the underwriter from the consequences of negligences has been introduced into marine policies, and hence cases involving the constructing of this clause are not numerous; but we take it that wherever, under the ordinary form of a policy, the insurer would be exonerated from the consequences of a peril occasioned by barratry, he would, under this clause, escape liability if the peril were occasioned by the negligence of the master and crew, and that this is a question for the jury in each case. *Milwaukee Ry. Co.* v. *Kellogg*, 94 U. S. 469. This appears to have been the construction given to a similar provision by Mr. Justice Woods in *Levi* v. *New Orleans Ins. Ass'n*, 2 Woods, 63, which was an action upon a policy to recover a loss resulting from a collision occasioned by the negligence of the pilot of the insured vessel. The fault committed by the vessel was in the non-observance of a rule or custom of the river, that ascending boats should run under the points near the shore, so as to avoid the current, while descending boats followed the main channel of the river, so as to take advantage of the current. The policy provided that the boats should be navigated "free from any loss or damage by barratry, or by the negligence of those in charge of the boat, at or before the time of any accident or disaster;" and it was held that, as there was negligence in the management of the insured vessel at the time of the collision, there could be no recovery. See, also, *St. John* v. *American Mut. Ins. Co.*, 11 N. Y. 519; *Lund* v. *Tyngsboro*, 11 Cush. 563; *Butler* v. *Wildman*, 3 Barn & Ald. 398.

In *Thompson* v. *Hopper*, 6 El. & Bl. 937, which was an action upon a time policy, it appeared the plaintiff sent the ship to sea in an unseaworthy state, and caused her to anchor in the offing in that state. While there, she was caught in a storm, and driven ashore. There was evidence from which the jury might have drawn the conclusion that, although the unseaworthiness was not the immediate cause of loss, the loss would not have occurred if the ship had been seaworthy when she went to sea. It was held that the defense was made out if the

misconduct of the plaintiff occasioned the loss, though it was not its immediate cause. In delivering the judgment, Lord CAMPBELL observed:

"Is it to be said, then, that, to exempt the assurers from liability, the misconduct of the assured must be the direct and proximate cause of the loss? We think that, for this purpose, the misconduct need not be the *causa causans,* but that the assured cannot recover if their conduct was *causa sine qua non.* In that case they have brought the misfortune upon themselves by their own misconduct, and they ought not to be indemnified. The very object of insurance is to indemnify against fortuitous losses which may occur to men who conduct themselves with honesty and with ordinary prudence. If the misconduct is the efficient cause of loss, the insurers are not liable."

In *Ionides* v. *Universal M. Ins. Co.,* 14 C. B. (N. S.) 279, a policy of insurance on a ship-load of coffee contained the words: "Free of capture, seizure and detention, and all the consequences thereof, and of any attempt thereat, and free from all consequences of hostilities, riots, and commotions." The ship was wrecked on Cape Hatteras, where there was a light-house, the light of which, however, had been extinguished by the Confederates. A large portion of the cargo might have been saved had not the Confederates prevented it. It was held that there was a total loss, by perils of the sea, of that portion of the cargo which could not have been saved, notwithstanding the hostile extinguishment of the light, but that the loss of that part which might have been saved but for the interference of the Confederates was a consequence of hostilities, within the exception of the policy, and therefore, as to that portion, the insurers were not liable. The case is a very instructive one upon the subject of proximate and remote cause, and apparently is in full accord with that of the supreme court in the case of *Waters* v. *Merchants' Louisville Ins. Co.,* 11 Pet. 213.

We see nothing inconsistent with these cases in the subsequent ones of *Dudgeon* v. *Pembroke,* 1 Q. B. Div. '96, S. C. 2 App. Cas. 284, and *West India, etc., Co.* v. *Home, etc., Ins. Co.,* 6 Q. B. Div. 51. Nor are we much impressed with the distinction drawn in one or two cases between actions upon bills of lading and upon policies of insurance, with respect to the liability of the defendant for losses occasioned by a peril of the sea. This distinction seems to be repudiated in the case of *The Portsmouth,* 9 Wall. 684, and even if sound, is without force in the construction of the policy in this case. Few of the English cases are of any value, as their policies do not seem to contain the proviso exempting the underwriter from perils and losses occasioned by negligence and unseaworthiness.

We have found it impossible to reconcile our views, as to the proper construction of this policy, with the opinion of the Illinois court of appeals in *Greenwich Ins. Co.* v. *Raab,* 11 Bradw. 636, in which it was held, under a policy of this description, that the underwriter was liable notwithstanding the loss was produced by the want of care in the navigation of the vessel. The cases of the *National*

*Ins. Co.* v. *Webster*, 83 Ill. 470, and the others cited in support of this conclusion, are not controlling, as the policies in none of them contained this provision. We think the learned court was misled by the language of the early English cases.

We have no criticism to make of *Western Ins. Co.* v. *Cropper*, 32 Pa. St. 351, and *Commonwealth Ins. Co.* v. *Cropper*, 21 Md. 311, as the question in each case was as to the extent of the liability of the company under what was known as the "steam-boat clause." The opinions throw no light upon the present controversy.

Upon the whole, we have come to the conclusion that there was no error in the instruction complained of. If there be any significance at all to the exception of perils and losses caused by negligence or unseaworthiness, they surely ought to suffice for the exoneration of the underwriter in a case where a steamer, equipped with a compass known to be defective, is driven in a dense fog, with unabated speed, and in direct violation of a local statute, upon an island lying but eight miles off her usual track. To say that, under such circumstances, the negligence or unseaworthiness was not the proximate or efficient cause of the peril or loss seems to us a distinction too subtile and refined for the ordinary apprehension. It is difficult to conceive of a loss by negligence or unseaworthiness, unconnected with a sea peril. But under this policy, if the peril be so produced, the subsequent loss is within the exception. The question as to the cause of the loss was fairly left to the jury, and we see no reason to differ from their finding.

5. That the court erred in charging the jury that "if there were any defects in the compass, known or unknown, rendering it unsafe or unsuitable for use in Lake Superior, and the stranding of the vessel was caused by or consequent upon or arose from such defects in the compass, the vessel was not seaworthy for Lake Superior navigation, whatever her fitness for navigation elsewhere, and the plaintiff cannot recover." It may be assumed that there is no implied warranty of seaworthiness in a time policy, and the mere fact that the vessel was unseaworthy would not preclude a recovery in case of a loss unconnected with the defect; but the policy contains an express exception of liability for losses occasioned by this cause, and whether it was known or unknown would be immaterial. The exception amounts to a warranty that the loss shall not be caused by unseaworthiness, and the ignorance of the owner of the defect in the compass would not affect his right to recover. *The Glenfruin*, 5 Asp. 413; *Work* v. *Leathers*, 97 U. S. 379; 1 Pars. Ins. 337, 368.

This covers all the points made in the briefs of counsel. The motion for a new trial must be denied, and judgment will be entered upon the verdict.