## Case No. 10,540.

### The ONRUST.

[6 Blatchf. 533.] [1]

Circuit Court, S. D. New York. Aug., 1869.[2]

CHARTER PARTY—DIRECT COURSE—DEVIATION—IMPRESSMENT BY MILITARY AUTHORITIES—JUSTIFIABLE SEIZURE.

1. Where, by a charter-party, the owner of a vessel agreed that she should proceed direct from the Tortugas, whither she was bound, to another port, to load under the charter, and, after arriving at the Tortugas, she was seized by the military authorities of Fort Jefferson, and compelled to go on two voyages to Key West, for cargoes of coal, which it was alleged was necessary to be used in condensing fresh water for the use of the post, and the seizure was against the protest of the master of the vessel, and without any fault on his part: Held, in a suit against the vessel, on the charter-party, to recover damages for its breach and for the delay, that the military authorities were justified in impressing the vessel.

2. If they had erred, and their error had been simply an error of judgment, on the facts as they appeared to them, they would still be justified.

3. The word "direct," in the charter-party, means that the vessel is to take a direct course from the Tortugas to the loading port, without deviation or unreasonable delay, and not that she shall depart from the Tortugas immediately.

4. The duty to perform the agreement to proceed direct from the Tortugas to the loading port, was an obligation imposed by law.

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirming Case No. 10,539.]

5. A forcible detention will excuse from the performance of an obligation created by law.
[Cited in The Coventina, 52 Fed. 157.]

6. The case of Paradine v. Jane, Aleyn, 27, commented on.

7. The seizure of the vessel being justified, and her owner having been disabled from performing his contract without any fault on his part, the fact that he has a remedy over against the government does not make him responsible to the charterer for the delay.

8. In this case, he is not responsible for such delay, even though the military authorities were trespassers in seizing and detaining the vessel.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, in the district court, against the schooner Onrust, to recover damages on a charter-party, by which the owner of the schooner chartered his vessel for a voyage from a place, or places, designated, in the state of Florida, to the port of New York, with a cargo of cedar. The charter-party, which was dated December 14th, 1865, contained this language: "It is understood, that the vessel is now loading for Key West, or the Tortugas,. and is to proceed thence direct, to load on this charter." The vessel reached Fort Jefferson, at the Tortugas, January 19th, 1866, and discharged her cargo, and was ready to start for the port in Florida, as required by the charter, when she was seized by the authorities of the fort. and compelled to go on two voyages to Key West for cargoes of coal, for the alleged necessities of the place. The allegation was that the officers and soldiers in the fort depended upon coal to condense water for the post. The district court decreed for the claimant [Case No. 10,539], and the libellant appealed to this court.

George De Forest Lord, for libellant.
Robert D. Benedict, for claimant.

NELSON, Circuit Justice. There is no doubt that the vessel was impressed by the authorities, for the voyages to Key West, against the will and protest of the master, and without any fault on his part; and that, while thus engaged, she was under the control of the public authorities. This detention occasioned the delay complained of in the libel as an infraction of the charter-party.

In Mitchell v. Harmony, 13 How. [54 U. S.] 115, 134, Chief Justice Taney says: "There are, without doubt, occasions in which private property may lawfully be taken possession of or destroyed, to prevent it from falling into the hands of the public enemy; and, also, where a military officer, charged with a particular duty, may impress private property into the public service, or take it for public use. Unquestionably, in such cases, the government is bound to make full compensation to the owner; but the officer is not a trespasser." He admits that. in all such cases, the danger must be immediate and impending. or the necessity urgent for the public service,

and such as will not admit of delay. In that case, the court held, upon the testimony, which was undisputed, that, a case of danger or necessity, within the rule of law, had not been made out, and sustained the judgment for the plaintiff. The chief justice further observes, that, in deciding upon the necessity, "the state of the facts, as they appeared to the officer at the time he acted, must govern the decision; for, he must necessarily act upon the information of others, as well as his own observation; and if, with such information as he had a right to rely upon, there is reasonable ground for believing that the peril is immediate and menacing, or the necessity urgent, he is justified in acting upon it, and the discovery afterwards that it was false or erroneous, will not make him a trespasser." Within this principle, I am inclined to think. that, in the case now before us, the authorities at Fort Jefferson were justified in impressing the vessel for the purposes and uses alleged. Something is due to the decision, made by these officers under the circumstances and relative situation and condition of the fort—remote from any supply of fresh water for the garrison, and dependent upon the article of coal, as a necessary material in obtaining it. The officers may have erred, but. if their error was simply an error of judgment, on the facts as they appeared to them, they will still be justified.

It is argued, however, that, assuming this to be so, it constitutes no defence against delay in the voyage, in this case, as the carrier had expressly agreed in the charter-party, that he would proceed directly from the Tortugas, on discharging his cargo, to the port or ports of loading in Florida; and that, as he thus. in terms, covenanted to proceed directly. and without any delay, this forcible detention will not excuse him, within the rule laid down in Paradine v. Jane, Aleyn. 27, and that class of cases. In other words. it is claimed, that, if a party charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law. or the other party. The law, however, is otherwise, if the obligation or duty is created by law.

It is supposed. by the counsel for the libellant, that, by the clause in the charter-party to which I have referred, there is an express and positive obligation entered into by the carrier, to proceed at once from the Tortugas, on unloading his outward cargo, to the port or ports in Florida. and that the only excuse for delay is to be found in the instances given in the case of Paradine v. Jane. I am of opinion that this is too narrow and strained a construction of the word "direct," in the connection in which it is found; and that a plainer and more natural interpretation is. that that word is used to express, simply. the course of the voyage to be performed by the vessel, after arriving at the Tortugas. She was to go direct, that is, she was to take

a direct course thence, to the port or ports in Florida, without deviation or unreasonable delay. Giving to the word this interpretation, the duty to perform the covenant with diligence, and in a reasonable time, was an obligation imposed by law, as contradistinguished from one imposed by positive contract. It did not mean that the vessel should depart from the Tortugas instantly or immediately, but that she should, at that place, enter upon the voyage provided for in the charter, and proceed in a direct course to the place of loading in Florida. The degree of diligence and despatch, according to this interpretation, is a question of law, under the particular circumstances of the case.

It is insisted, however, that, admitting that the officers at the fort were justified in seizing the vessel, and that the party was disabled from performing his contract without any fault on his part, still, as he has a remedy over against the government, he is not exempt from responsibility for the delay. The answer is, that the remedy over is, within the contemplation of the rule in Paradine v. Jane, a legal remedy, which may be enforced in a court of justice.

Upon the interpretation thus given to the contract, the defence here is complete, even assuming that the officers of the fort were trespassers in seizing and detaining the vessel. Harmony v. Bingham, 2 Kern. 99; Parsons v. Hardy, 14 Wend. 215; Wibert v. New York & E. R. Co., 19 Barb. 36, 2 Kern. 245; Conger v. Hudson River R. Co., 6 Duer, 375.

Decree affirmed.