## Case No. 13,586.

### The SUCCESS.

[7 Blatchf. 551.] [1]

Circuit Court. D. Connecticut. Sept. 20, 1870.

CHARTER PARTY—DELAY IN SAILING—MEASURE OF DAMAGES.

1. Where a vessel is chartered on a time charter, for a voyage, the time to be paid for at a specified rate, her obligation to her charterer is, that she will sail without unnecessary delay, and proceed, with all reasonable dispatch, to her destination.
   [Cited in The Giulio, 34 Fed. 911; The Coventina, 52 Fed. 157; The Caledonia, 157 U. S. 124, 15 Sup. Ct. 544.]

2. The conditions of the contract, the nature of the cargo, and the object of the voyage, may all be considered in determining what is reasonable.

3. The rule of damages, in a suit in admiralty, brought by the charterer against the vessel, for a breach of that obligation, is, that the libellant

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

is entitled to the difference between the fair market value of the cargo at the port of destination on the day when the cargo ought to have been delivered, and its value at the time when the vessel arrived, and made, or was in readiness to make, such delivery.

[Cited in Page v. Munro, Case No. 10,665. Cited in brief in Schmidt v. The Pennsylvania, Id. 12,464; The Caledonia, 43 Fed. 686.]

[Appeal from the district court of the United States for the district of Connecticut.]

In admiralty.

John T. Wait and Jeremiah Halsey, for libellants.

James A. Hovey, Abiel Converse, and Lafayette S. Foster, for claimant.

WOODRUFF, Circuit Judge. 1. The title of the libellants to a decree in this case does not depend upon any doubtful question of law, nor was there any serious difference between the counsel for the respective parties, on the hearing, in respect to the rules governing the rights of the parties.

The claimant's vessel was under charter to the libellants for a voyage. She was fully laden for that voyage on the morning of the 1st of April, 1865, with potatoes, apples, and other produce, bound for Norfolk, via Fortress Monroe, for a market. The agreement of the parties specified no time for sailing, nor any time for arrival. The obligation which, in such case, is implied by law was, that she would sail without unnecessary delay, and proceed, with all reasonable dispatch, to her destination; and the conditions of the contract, the nature of the cargo, and the object of the voyage, may all be considered in determining what is reasonable. The contract was a time contract, and not a contract for the voyage in gross. The libellants agreed to pay for the time consumed therein, at a specified rate. The master had, therefore, no right to consume more time than was reasonably necessary, and, by delay, increase the earnings of the vessel at the expense and loss of the libellants. The cargo was perishable. This was a further reason why time should not be wasted. The cargo, as is charged in the libel and admitted in the answer, was shipped for a market. The libellants were, on this ground, also, entitled to all the advantage which reasonable dispatch would secure to them in the market for which the vessel was bound. These are special reasons for the application of the rule in this particular case; and, irrespective of such special reasons, the rule is general, as to contracts for transportation where no time is mentioned, namely, that they must be performed within a reasonable time. The contested question here is, therefore, so far as relates to the right of the libellants to recover, one of fact, to be determined by the weight of the evidence.

It was found by the district court, that the master of the vessel unreasonably and unnecessarily delayed her sailing after she was laden; that he increased that delay by selecting the most circuitous and least advantageous of the two routes to her destination, without reasonable cause; and that her departure from New York was needlessly delayed, after she had reached that port, on the route selected. In those conclusions, after a careful consideration of the testimony, aided by the arguments of counsel, I concur. I shall not review the evidence, but it' is proper to say that, to my mind, the preponderance is in accordance with those findings. In cases of this sort, there is usually more or less conflict, and it is not difficult for parties interested to form and express opinions tending to exempt them from liability. The master of the vessel is not only contradicted, in important particulars, by both the libellants and their supercargo, but his own explanations of his delay at New London are unsatisfactory, and inconsistent with other testimony, with the state of the wind and weather, and with the experience of at least one other vessel; and even the master himself, in substance, admits, that there was no reasonable excuse for so great detention in New York.

Without, however, going into detail, I deem the conclusion fully warranted, that, had the vessel sailed as soon as she reasonably might, and had she proceeded with due dispatch, she would have arrived as soon as the 10th of April, and probably before that day. The failure of duty in this respect was, therefore, a breach of contract, and entitled the libellants to recover their damages.

2. No exception to the assessment of damages by the commissioner, to whom it was referred to take proofs and make the computation, is urged in this court. Such exceptions as were formally taken below were withdrawn in the district court when the final decree was moved for. The rule of damages prescribed by the court to the commissioner, for his guidance in making the assessment, was the difference between the price at which the libellants had contracted for the sale, or at which it might have been made on the 10th of April, and the price at which it was actually made, and the loss on such of the produce as perished by decay, where that decay was clearly traced to the unreasonable delay.

Before the 10th of April, the libellants had made a contract for the sale of the goods, upon condition that they should arrive on or before that day, and, as they failed to arrive, the proposed purchasers refused to receive them at the price stipulated.

Probably, the rule thus stated was not intended by the court below to charge the vessel with any special damages, by reason of the fact that the libellants had negotiated that sale, but only to suffer the fact of this particular sale, negotiated as it was only two days before the 10th, to be considered in reference to the question—what was the market value on the day the vessel should have arrived? If a sale had been negotiated on the

4th of April, conditioned on her arrival on the the 10th, and that was found to be the day on which she should have arrived, but, between the 4th and the 10th, the market price had fallen off, it would hardly be claimed, I think, that the loss of that special contract furnished a rule of damages.

The commissioner here has found specially the contract of sale and its price, but he has also expressly found that that price was the fair market price of the articles on the 10th of April. His assessment conforms, therefore, in fact, to the rule which gives to the libellants the difference between the fair market value on the day when the vessel should have delivered her cargo, and the value at the time when she in fact arrived, and made, or was in readiness to make, such delivery; and this rule is not claimed to be erroneous.

That, in such cases, the libellants are entitled to interest, has been often denied. But the question is not material here, since, although the commissioner computed the interest, the court awarded even less than the principal sum reported as damages. The parties having stipulated for value, and discharged the vessel from custody, agreeing upon such value at $5,000, the stipulators were decreed to pay, in discharge of their stipulation, that amount only, with costs.

The decree must be affirmed, with costs.