## THE FRANK P. LEE.[1]

INSURANCE CO. OF NORTH AMERICA v. THE FRANK P. LEE.

*(District Court, E. D. Pennsylvania. March 18, 1887.)*

1. COLLISION—SCHOONERS.
  The schooners A. and B. were sailing off Cape Cod. Between 9 and 10 o'clock at night both vessels were heading about W. by N., on their starboard tack, B. being a quarter to a half mile in the rear of A. The wind was coming from the N. N. W. There was from five to seven miles of navigable water between the vessels and the shore. B. changed her course about two points southward, and ran under A.'s stern. Soon after, B. again changed her course to go about, across A.'s bows, missed stays, and before getting off was struck and sunk. No light was displayed from B.'s stern after passing A. *Held*, that B. was guilty of negligence, and that there could be no recovery against A.

2. SAME—ABSENCE OF TORCH.
  Failure to display a light or torch required by the statutes is negligence, if there is a possibility that a collision would have been avoided had the requirements of the statutes been observed.

In Admiralty.
*Gibbons, Jr., & Henry,* for libelant.
*Mr. Edmunds,* for respondent.

BUTLER, J. The vessels (out of whose collision this suit arises) were coasting schooners, bound from Elizabethport, New Jersey, to Boston, laden with coal. Having started March 22, 1886, they were at Cape Pogue on the morning of the 23d, and in the evening (between 9 and 10 o'clock) were off the northern end of Cape Cod, where they collided, and the D. & J. Lee, with her cargo, was sunk. The suit is brought by insurers of the D. & J. Lee, who, having paid the amount insured, are subrogated to her rights. A short time before the collision the vessels were heading about W. by N., on their starboard tack, and were

---

[1]Reported by C. B. Taylor, Esq., of the Philadelphia bar.

near together; the D. & J. Lee being in the rear, possibly a quarter to a half mile. The wind was coming from the N. N. W., and the sea rough and, chopping. The distance from the shore was probably five to seven miles, and the water for this distance appears to be navigable. Under these circumstances the D. & J. Lee changed her course about two points southward, and ran under the respondent's stern, passing at a safe distance. A short time later she again changed her course, to go about, across the respondent's bows, missed stays, and before getting off was struck. No light was displayed from her stern after passing. She was at no time, however, entirely out of sight, her sails being visible, though her hull was not. Her change of course, in front, was not discovered by respondent until her green light came into view. Immediately on seeing this, respondent headed southward, to run under her stern.

The faults charged against the respondent are (1) that she did not immediately go about, on her port tack, when the D. & J. Lee changed her course; and (2) that she had not a proper lookout, and consequently did not see the change of course as soon as she should.

Although pressed with much earnestness and ability, neither charge is, in my judgment, well founded. Supposing the vessels to have been as far apart as stated by the libelant when the change of course occurred, the respondent's movement was entirely safe and proper. Her change of head would certainly have carried her under the D. & J. Lee's stern. As her starboard tack was not run out, and might be prolonged for several miles, her maneuver was rational, and such as the vessel in her front should have expected.

Supposing, however, the vessels to have been materially closer together than stated by the libelant, is the respondent blamable for heading as she did? I do not think so. She was probably mistaken respecting the distance. The D. & J. Lee's act, in tacking, was of itself a forcible suggestion that the distance was a safe one. Especially was it so in the absence of the statutory torch, or other signal of possible danger. Such mistake would involve no responsibility. Should the respondent, however, when approaching nearer the D. & J. Lee, and discovering the danger of collision, have reversed, and endeavored to go about? This was a question I could not answer from the testimony. To a seaman it would present no difficulty; but I was uninformed respecting the distance within which the maneuver might have been safely executed. I have therefore taken the judgment of an assessor respecting it, and also respecting two or three other points, about which, however, I had no difficulty. His answers show that the collision could not have been avoided by attempting to go about after heading southward, and probably not before.

There is no evidence tending to support the second charge. On the contrary, the protest which the libelant put in evidence shows that there was no lack of vigilance in this respect. The inference (drawn from the collision itself) that the D. & J. Lee was not seen on commencing her change of head, because had she been, and the respondent then

turned southward, the collision would have been avoided, is not justifiable. The fact that the maneuver did not avoid the accident can more reasonably and safely be accounted for by supposing the vessels to have been nearer together when the D. &. J. Lee changed, than the officers supposed. This is a subject about which they might readily be mistaken, while the officers of the respondent (who say in their protest that the lookout was vigilant, and the vessel ahead continually seen) could *not* be mistaken. Furthermore, all proper inferences touching the subject tend to show that the vessels were near together at the time. The circumstances that the collision occurred notwithstanding the respondent's prompt change of head; that the master of the D. & J. Lee hallooed to the respondent to "go about" at the time of ordering his own vessel about, and hesitated respecting further movements until he saw what the respondent would do; and that the collision occurred almost directly after the change of course,—seem to leave no room for doubt that the vessels were very near together when the change of course occurred,—so near, indeed, that the attempt to cross the respondent's bows was hazardous and unjustifiable. It may be suggested that it is unreasonable to suppose the D. & J. Lee would thus attempt to cross the respondent's bows. This would have much force, in the absence of evidence tending to show she did. Like most other men, masters of vessels are not always considerate and prudent. The fact that this master ran past the respondent, (with whom he had been sailing all day, and proposed accompanying to the end of his voyage,) with intent to cross her front, without materially lengthening his tack, while he might (without serious disadvantage) have tacked before passing, or afterwards without crossing, by simply shortening sails, allowing respondent to continue her course, and tacking astern, tends forcibly to show that he was not considerate or prudent. It is probable, however, that he was mistaken in the distance between the vessels. The difference in speed was not great. The testimony shows that considerable time was occupied (and some slight difficulty experienced) in getting past. How much space he gained, and how much time was occupied after passing and before tacking, he does not know. Neither he nor his officers could have told, had their attention been called to it before the collision. What they say now is little better than guessing. The references to time and distance in their testimony, and in the protest, are estimates and approximations, merely: That the D. & J. Lee was in fault in more than one important respect, I do not doubt. Intending to tack so soon, she should not have passed the respondent, but have gone about on overtaking her. Having passed, she should have continued her course until far enough ahead to go about with absolute safety,—whether the respondent should turn southward or hold her course. Crossing the latter's bows where she attempted was a grave fault, and the primary cause of the accident.

She was, however, guilty of fault in failing to display a torch or white light, in coming up to the wind, in the respondent's front, and virtually stopping in her track,—as required by the statute. It is impossible to say that such a light would not have tended to avoid the collision. The

assessor thinks it would, and his conclusion is reasonable. It is sufficient, however, that it might *possibly* have done so. *The Pennsylvania,* 12 Fed. Rep. 916; *The Excelsior,* Id. 203; *The Hercules,* 17 Fed. Rep. 606.

For the reasons above stated, the libel is dismissed, with costs.