Brown, District Judge.
On the 9th of January, 1892, a quantity of wine was shipped at Leghorn, Italy, on board the steamship Coventina, bound for New York. The vessel did not arrive till the 18th of April, 1892, a period of 100 days. Forty-three days was the outside limit of the usual time of delivery. The wine had been sold by the consignee “to arrive,” and in consequence of the great delay in arrival, the purchaser revoked the contract and refused to accept the wine. Meantime the market price declined; and this libel was filed to recover the loss.
The vessel had been chartered by the owners. After the wine was shipped, a controversy arose between the owners and the charterers upon the terms of the charter, whether the ship was bound-to touch at certain ports in Spain. The master refusing to proceed to the ports desired, the charterers caused the vessel to be attached in Italy on the 27th of January, on a claim of damages for breach of charter, and she remained in custody 40 days, until a reversal on appeal. The owners were unable to procure her release at first, the practice there not entitling them to this right. There is no proof of negligence in the endeavor to procure the release of the ship, or to dispatch her upon the voyage. The court of first instance at Civita Vecchia decided the suit in favor of the charterers. The owners might then have obtained $ release of the vessel by the payment of the judgment; but the charterers having become insolvent, the owners could not safely pay the decree and expect to get back the money in case of reversal. The vessel was, therefore, left in custody and an appeal taken to Rome, on which the judgment below was reversed, at the end of 40 days from the original arrest, with damages to the amount of the charter, pursuant to its stipulation, in favor of the owners.
For the ship it is contended that, in the absence of any negligence, she is not liable; 1 Pars. Shipp. & Adm. 311; The Success, 7 Blatchf. 551; The Onrust, 6 Blatchf. 533; for the libelant, that she is answerable for damages to the cargo owner for nondelivery within a reasonable time.
The exception in the bill of lading, “Restraint of Princes,” etc., does not, I think, include a detention under a suit like that above stated. Finlay v. Steamship Co., 33 Law T. (N. S.) 251. The charter was a charter of affreightment, voluntarily entered into for the mutual interest of the owners and the charterers. As respects the shipper of goods, they both represented a single interest; and the vessel was bound for the delivery of the goods according to'the legal import of the bill of lading, which the owners in legal effect, by the master, had issued. This obligation was to deliver within a reasonable time. The charter was but a means of procuring freight; and if, for securing freight, the owners incumbered themselves by a charter contract, I do not perceive how any controversy *158 between them and the charterers could change their obligation to the shipper to deliver within a reasonable time under the bill of lading they had issued. The shipper was a stranger to that controversy. Its consequences were not at the shipper’s risk, but at the risk of the owners, who had voluntarily dealt with the charterers and had chosen to obtain cargo in that way. If the charterers were in the wrong, the owners were entitled to indemnity from them; and the court of appeal, as above stated, seems to have awarded that indemnity.
Nor is a detention of the vessel by an attachment in such a litigation .•such a circumstance as is to be taken into account in considering what is a usual or reasonable time. Upon this point the case of Broadwell v. Butler, 6 McLean, 296, is analogous. It is there said, (page 300:)
“The subsidence of the water in the Ohio river, which prevented the boat •from passing over the falls, was not a cause of delay, which, within any of the principles, would excuse the carrier from the obligation imposed by law to deliver the property within a reasonable time. It was practicable to have delivered the cargo at Cincinnati by draying the molasses and sugar around the falls, and reshipping on other boats.”
The waiting for the rise of water was there justified solely on the ground •of long usage. So in this case, had not the owners wished to rely on indemnity to be obtained from the charterers, they might have reshipped the goods by another vessel.
In the case of Stiles v. Davis, 1 Black, 101, it was held in the supreme court that a seizure of the goods by the sheriff under an attachment as the property of a third party, was a good defense by the carrier to an .action of trover for nondelivery. But in such cases the carrier is a stranger to the controversy. He performs his whole duty by prompt notice to the owner and proper care and defense of the goods meantime. In the case at bar the controversy was the ship’s own controversy, founded on her own contract by charter to which the shipper was a ,stranger, no reference to the charter being made in the bill of lading. 'The -relations of the cargo owner to the controversy in the two cases are reversed. But even in the former class of cases, prompt notice to the owner, and due care in the meantime, are obligatory on the carrier. For nonperformance of these duties the ship in the case of The M. M. Chase and The G. P. Trigg, 37 Fed. Rep. 708, in this court, was held .liable; and this ruling was affirmed on appeal.[1] So here, when it was found that this ship had been seized and could not be released, except at •great risk to the owners, until the end of an uncertain litigation, reasonable consideration of the shipper’s interests required either that the goods .should be transhipped to their destination by some other vessel, or else that the shipper should be notified of the liability to delay, and the privilege given him to reship at his 'option. In default of this, the ship took on herself the risk of loss by delay, with the right of recourse to the charterers for indemnity.
On both grounds I think the libelant is entitled to a decree, with •costs.

 No opinion.