## THE NORTH STAR.
## THE FRANCIS J. REICHERT.

(Circuit Court of Appeals, Second Circuit. January 15, 1919.)

Nos. 122, 123.

1. COLLISION ☞63—LIABILITY—VESSELS AT FAULT.
    In a suit for collision between a steamer and a cattle float in charge of a tug, *held*, that the steamer and tug were both at fault.

2. COLLISION ☞25—LIMITATION OF LIABILITY—RIGHT TO LIMIT.
    Where a collision was due entirely to careless navigation, the fact that the mate of the tug, in charge of a cattle float injured by the collision, was not on board, *held* not ground for denying the owner of the tug the right to limit liability; it appearing that the collision did not occur during the mate's watch.

Appeals from the District Court of the United States for the Southern District of New York.

Libel for collision by the Reichert Towing Line, Incorporated, against the steamer North Star, her engines, etc., claimed by Calvin Austin, as receiver of the Eastern Steamship Corporation, and by the New York Stockyards Company, against the steamer North Star, her engines, etc., also claimed by Calvin Austin, as receiver, and the steam tug Francis J. Reichert, her engines, etc., claimed by the Reichert Towing Line, Incorporated. From decrees finding both vessels at fault, the Reichert Towing Line, libelant, which was claimant of the steam tug Francis J. Reichert, and Calvin Austin, receiver, claimant of the steamer North Star, appeal. Modified and affirmed.

Foley & Martin, of New York City, for appellant Reichert Towing Line, Inc.

Park & Mattison, of New York City, for appellee New York Stockyards Co.

Haight, Sandford & Smith, of New York City, for the North Star.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. December 8, 1915, about 5 p. m., the cattle float El Paso, on the starboard side of the tug Francis J. Reichert, bound down the North River, came into collision with the steamer North Star, bound up the river about off Pier 1 or 2. The night was dark, but clear, and the one thing certain is that the collision was inexcusable.

There is even more than the usual contradiction between the witnesses as to lights and signals, and there are the usual obvious inaccuracies in the estimates of time and distance. It would be quite useless to review the testimony in detail.

The story of the Reichert is that the North Star, being on the starboard bow of El Paso, ported, and so struck the starboard side of the cattle float. The story of the North Star is that the Reichert, being on the port bow of the North Star, starboarded across her course, and so came into collision with her starboard bow.

[1] Certain facts are fairly clear. Each vessel contends that she was going straight up or down the river, respectively parallel with the line of the New York piers. Each agrees that the collision was a side swipe between the bluff of the North Star's starboard bow and the starboard side of El Paso, and each admits that if the North Star's stem, which is sharp, had struck El Paso, it would have gone right through her side.

The engine room log of the North Star shows that the engines were worked as follows:

Stop, 5:14.
Astern, 5:14.
Stop, 5:16.

There is no reason to doubt the accuracy of these entries, and they show quite obviously that the danger of collision was appreciated all at once at 5:14, and that the collision happened somewhere between 5:14 and 5:16, when the signal to stop must have been given after it. The North Star has a left-handed propeller, which backs to port, and the bow of El Paso is square.

It seems quite plain to us that the steamer and cattle float must have been approaching nearly head on, and such is the testimony of a number of the witnesses. We are satisfied that a vigilant lookout on either vessel would have prevented the collision, and that they were so close when they appreciated the danger that the collision was practically unavoidable. Starboarding of their helms in accordance with the signal of two blasts blown by the Reichert, though this is not testified to, and the effect of reversing the North Star's left-handed propeller, might explain the bluff of her bow coming in contact with El Paso's starboard side a little aft of the bow and the vessels then scraping past and clear of each other. But quite apart from this possible explanation, lack of vigilance and of a proper lookout is sufficient to put each vessel at fault. What occurred is much more consistent with the lack of vigilance on the part of both vessels than such an extraordinary and senseless manœuver as each attributes to the other.

A great deal is made by the counsel for the cattle float of the nearness of the North Star to the New York shore. It does not seem at all important to us in this case, and if it were a fault both vessels were guilty of it.

[2] Upon the question of the Reichert's right to limit we cannot agree with the District Judge. The collision was due entirely to careless navigation. There is no pretense that the master of the tug was not properly licensed, and there is no obligation that her lookout should have a license. The particular fault attributed to the owner, viz. that the mate was not aboard the tug, had nothing whatever to do with the collision, because it did not happen in his watch, and if he had been on board he might well have been asleep, and he certainly had no duty to perform. On the same reasoning, the owner's right to limit might be denied, because there was no anchor aboard.

The decrees finding both vessels at fault are affirmed, but modified, by allowing the owner of the tug to limit its liability. No costs of this appeal.