## THE DENALI.

### PACIFIC COAST COAL CO. et al. v. ALASKA S. S. CO.

### UNITED STATES v. SAME.
#### No. 8963.

Circuit Court of Appeals, Ninth Circuit.
June 7, 1940.

MATHEWS, Circuit Judge, dissenting in part.

———◆———

For former opinion reversing decree in 23 F.Supp. 145, see 105 F.2d 413.

T. Catesby Jones, James W. Ryan, and Bigham, Englar, Jones & Houston, all of New York City, and Lane Summers and Hayden, Merritt, Summers & Bucey, all of Seattle, Wash., for appellants Pacific Coast Coal Co. and others.

J. Charles Dennis, U. S. Atty., and Frank A. Pellegrini, Asst. U. S. Atty., both of Seattle, Wash., for appellant United States.

Lawrence Bogle, Edward G. Dobrin, Cassius E. Gates, Stanley B. Long, and Bogle, Bogle & Gates, all of Seattle, Wash., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The opinion heretofore rendered in favor of the Pacific Coast Coal Company and the United States in this admiralty proceeding for limitation of liability for the wrecking and total loss of the passenger and freight Steamship Denali and the loss of her cargo is reported in The Denali, 9 Cir., 105 F.2d 413. In it we sustained the contentions of the appellants that the limitation of liability should be denied and that they should recover in full for their loss of cargo.

Our findings disagreed with the District Court, The Denali, 23 F.Supp. 145, with regard to the method in which the Denali's owner managed her with respect to the working hours of her navigating mates. We found that the first mate of the Denali, a pilot taking the place of the first mate who did not act as mate on the voyage, had stood 12 hours watch in two 6-hour watches per day on the voyage prior to the strand, instead of but 8 hours per day in watches alternating with the two other mates as required by the three-watch provision for mates of Section 2 of the Act of May 11, 1918, 46 U.S.C. § 223, 46 U.S.C.A. § 223. It matters nothing that an established practice is shown under the three-watch system for sailors that in serving in one of the 2-hour dog watches they have a watch service time of 10 hours one day and 6 the next day. The maximum is 10 hours not 12, and the average is 8 hours per day—not an average of 12.

We held that the vessel was navigated in violation of Section 2 which requires that she "shall have in her service and on board three licensed mates, who shall stand in three watches while such vessels is navigated * * *."

We found that the petitioning corporation owner of the Denali was privy to the navigation of the vessel when wrecked, because it was by its regulation and established practice that the navigating mate in the maneuvers leading to the strand commanded the vessel while he was and had been violating the three-watch requirement of the statute by standing 12 hours per day in navigating during the entire voyage.

The District Court had held that the "sole cause of the stranding of the steamer Denali and the resulting total loss of said steamer Denali and her cargo was due to faults or errors in her navigation which [the Denali's owner] was without privity or knowledge." 105 F.2d 413, 421. These holdings as to the "sole" cause and absence of privity were based upon the lower court's erroneous decision that the Act requiring the mates to stand three watches had not been violated. With regard to the finding that the wreck was caused by "faults or errors" in navigation, this is not disturbed by a finding that the act had been violated by the owner and hence imposed on the owner the presumption and burden of proof of The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148, that the violation could not have caused or contributed

to the fault or error in navigation, which presumption the owner had not overcome. Our holding was that it had not been shown that the violation was not such a direct or such a contributing cause. The situation is entirely unlike that in The Perseverance, 2 Cir., 63 F.2d 788, 790, in which the fault was not held a violation of any statute and the Pennsylvania rule not discussed.

By good luck the Denali, run by the navigating mate at full speed on a chartered reef, held fast. Had she struck on a course slightly more to her right, her port side well might have been torn out by the easterly edge of the reef and the vessel quickly capsized with heavy loss of life to her passengers and crew in the strong cold currents of the Alaskan waters. It was on an Alaskan voyage that The Princess Sophia, 9 Cir., 61 F.2d 339, also ran on a reef, with a total loss of sailors, passengers, cargo and steamer. In our opinion the three-watch provision for mates is for the purposes of minimizing such danger to human beings as well as to prevent loss to cargo. The identical issue of presumption of causation would be presented had the widow of a drowned sailor been the appellant instead of the United States or any other cargo owner.

The Denali's brief on the first hearing conceded that it did not urge "that the act in question regulating as it does the minimum number of licensed deck personnel on certain vessels is not a safety measure." In holding the prior Act of April 2, 1908, 35 Stat. 55, 46 U.S.C.A. § 222, to be safety legislation to prevent loss of life and property from fatigue, Judge Hough, in the cases of United States v. Union and United States v. Dalzelline, D.C.S.D.N.Y., Feb. 16, 1914, 1932 A.M.C. 1331, 1336, aptly stated our own view of what Congress had in mind in enacting the three-watch requirement for mates: "It is matter of common knowledge that safety in anything which requires human effort depends, in the last analysis, on the human being. A weary man is infinitely more dangerous than a defective pipe or an obscured light, because he is unfit to discover the unfitness of the inanimate object."

We further found that the owner consciously sent the vessel to sea in an "unseaworthy" condition with respect to the safe carriage of sailors, passengers and cargo because of the violation of this statute for safety against fatigue in navigation.

We held this defeated the Denali's claimed defense under the Harter Act, 46 U.S.C.A. §§ 190–195.

On the rehearing we reiterated these findings. Reargument was had on two questions of law, (A) Whether the Pennsylvania rule and presumption applies where the violation of a navigating statute occurs at the moment the vessel is navigated onto a reef; and, assuming it so to apply, (B) Whether an owner affirmatively found to be privy to the violation can escape the application of the rule and presumption by compelling the injured persons to litigate their claims in a limitation proceeding.

A. *The rule and presumption established in The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 118, control in libels for injury to sailors or cargo where the vessel has violated the positive command of a safety statute to prevent fatigue in the navigating officer controlling her navigation at the time that navigation caused the injury, whether by colliding with another vessel or with a reef on which she strands.*

The presumption and rule regarding such a violation established by the Supreme Court in The Pennsylvania is: "Concluding then, as we must, that the bark was in fault, it still remains to inquire whether the fault contributed to the collision, whether in any degree it was the cause of the vessels coming into a dangerous position. It must be conceded that if it clearly appears the fault could have had nothing to do with the disaster, it may be dismissed from consideration. The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute. * * * *"

It has been restated with a review of the cases enforcing it in other leading Supreme Court cases. In Belden v. Chase, 150 U.S. 674, 699, 14 S.Ct. 264, 272, 37 L.Ed. 1218, the Supreme Court reversed because of the refusal in an action at law to instruct the jury with obligatory force as to the rules of navigation as stated in the Pennsylvania case: " * * * and it is the settled rule in this court that, when a vessel has committed a positive breach of statute, she must show, not only that probably her fault did not contribute to the disaster, but that it could not have done so. The Pennsylvania, 19 Wall. 125, 136 [22 L.Ed. 148]; Richelieu Navigation Co. v. Boston Ins. Co., 136 U.S. 408, 422, 10 S.Ct. 934 [34 L. Ed. 398]."

It will be noted that while Belden v. Chase is a collision case it speaks of the "disaster", which as well could have resulted from running on a reef, and that it relies upon the case of Richelieu Navigation Co. v. Boston Ins. Co., 136 U.S. 408, 10 S.Ct. 934, 34 L.Ed. .398, where the disaster arose from a stranding and the Pennsylvania rule was applied.

In the same term, in the case of The Martello v. The Willey, 153 U.S. 64, 74, 14 S.Ct. 723, 726, 38 L.Ed. 637, the Supreme Court said: "There can be no doubt that the Willey was guilty of a statutory fault in the failure to provide herself with the fog horn prescribed by the international regulations, and the presumption is that this fault contributed to the collision. This is a presumption which attends every fault connected with the management of the vessel, and every omission to comply with a statutory requirement or with any regulation deemed essential to good seamanship. In The Pennsylvania, 19 Wall. 125 [136, 22 L.Ed. 148], it was said that 'in such a case the burden rests upon the ship of showing, not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.' * * * To the same effect are Richelieu Navigation Company v. Boston Insurance Company, 136 U.S. 408, 422, 10 S.Ct. 934 [34 L.Ed. 398]; Belden v. Chase, 150 U.S. 674, 699, 14 S.Ct. 264 [37 L.Ed. 1218]; * * *."

Here again the Supreme Court, in stating the rule that the presumption is one which "attends *every* fault connected with the management of the vessel, and *every* omission to comply with a statutory requirement," (italics supplied) says that "To the same effect" is Richelieu Navigation Co. v. Boston Insurance Co., where the "omission to comply with a statutory requirement" caused the vessel's stranding.

In American Merchant Marine Ins. Co. v. Liberty S. & G. Co., 282 F. 514, 517, the

Third Circuit Court of Appeals construes the application of the Pennsylvania rule in the Richelieu Navigation Company case for violation of a navigating statute in a stranding in the following language:

" * * * In this case it appears that the insured vessel had stranded in Canadian waters while running, contrary to the laws of Canada, at full speed in a dense fog. The rules of the Canadian statute correspond with those prescribed by Congress, Revised Statutes, § 4233 (Comp.St. § 7942 [33 U.S.C.A. § 301]); Act March 3, 1885, 23 Stat. 438, and recognized as international rules. Therefore, the court applied the law of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, that,

" 'Where a vessel has committed a positive breach of statute she must show that not only probably her fault did not contribute to the disaster, but that it certainly did not; and that it could not have done so.' "

In Flint & P. M. R. Co. v. Marine Ins. Co., C.C.E.D.Mich., 71 F. 210, 215, 216, the Circuit Court in a stranding case says of the application of the Pennsylvania rule in the Richelieu decision: " * * * The same reasoning which enforced the Canadian statute in that case, and held the steamer subject to the law of her flag, is equally cogent here. If the F. & P. M. No. 2, because of her stranding in Canadian waters, was subject to the statute of Canada, her breach of those statutes subjects the plaintiff to the burden of proving conclusively that her transgression in no way contributed to the result. If, on the other hand, the steamer is to be regarded as controlled by the law of her flag while navigating, by right of treaty between this country and Great Britain, the waters of the Great Lakes, whether on one side or the other of the international boundary line, the same rule of evidence requires the plaintiff to show that the breach of the statute, rule 21 of section 4233, or the act of 1885, if the latter controlled lake navigation, could have had no part in producing the disaster."

In Material Service, E.D.Wis., 1937 A. M.C. 925, 930, the District Court in a case, not of collision, but of injury to cargo by cutting holes in the hatch covers without a permit, in violation of the rule requiring the same, relied upon the application of the Pennsylvania rule in the Richelieu stranding case and held: " * * * By reason of the failure of libellants to meet the requirements of the governmental permit in respect of the holes in the hatch covers of the Material Service, libellants continued to be in violation of the rules and regulations of the Board of Supervising Inspectors, and continued to be guilty of a statutory fault. Under these circumstances the burden was upon the libellants to show not only that the cutting of the holes in the hatch covers of the Material Service and the condition of the vessel as a consequence of such cutting and the inadequate means of securing covers over the holes, did not contribute to the sinking of the vessel, but that they could not have been a contributing cause of the sinking. Richelieu Navigation Company v. Boston Insurance Co., 136 U.S. 408, at 422–423 [10 S. Ct. 934, 34 L.Ed. 398]. The libellants failed to sustain that burden."

The Denali's owner contends that the conclusion reached by the Supreme Court in two cases and these other courts in the several cases quoted from is wrong. It contends that when, in the Richelieu Navigation Company case, (136 U.S. at pages 415, 423, 10 S.Ct. at pages 937, 938, 34 L. Ed. 398), the Supreme Court held the trial court made no error in its eleventh instruction to the jury as follows: "As the Spartan was violating the statute laws of Canada in running at full speed in a dense fog, the plaintiff must show affirmatively that neither the speed of the steamer nor the defects of the compass *could have caused or have contributed to cause the stranding of the steamer*. The burden of proving a loss of this kind is upon the plaintiff. There is no presumption that the loss was occasioned by the peril insured against by the defendant."—and in its holding stated that: "In The Pennsylvania, 19 Wall. 125 [22 L. Ed. 148], it was held that, where a vessel has committed a positive breach of statute, she must show not only that probably her fault did not contribute to the disaster, but that it could not have done so. And this was but the statement of the settled rule in collision cases. In this case, in view of the seventh section of the Canadian statute, and the fact that perils occasioned by the want of ordinary care and skill or of seaworthiness were excepted by the policy, the same rule is applicable; hence the burden was on the plaintiff to show that neither the speed of the steamer nor the defect of the compass could have caused, or contributed to cause, the *stranding*. If it appeared that the misconduct or unseaworthiness was causa sine qua non, it was

an excepted peril; and that, as stated by Judge Brown, 'ought to suffice for the exoneration of the underwriter in a case where a steamer, equipped with a compass known to be defective, is driven in a dense fog, with unabated speed, and in direct violation of a local statute, upon an island lying but eight miles off her usual track.' 26 F. 606. We think there was no error in giving the eleventh instruction asked by the defendant, and forming the subject of the eighteenth assignment of error. * * *" Richelieu Nav. Co. v. Boston Ins. Co., 136 U.S. 408, 422, 423, 10 S.Ct. 934, 937, 34 L.Ed. 398—it was not applying the Pennsylvania rule to cases of stranding. We cannot agree with this contention.

There are other cases applying the Pennsylvania rule in non-collision cases. In The M. M. Chase,[1] D.C.S.D.N.Y., 37 F. 708, 713, Judge Addison Brown held the vessel liable in rem because the master violated a law of the State of Maine which required him to notify the consignee of goods of an attachment on the goods pursuant to a writ sued out of a Maine court. In applying the Pennsylvania rule Judge Brown held: "The libelants are not bound to prove that the goods would certainly have been saved. The burden is on the respondents to prove that pursuing the course required by law could not possibly have made any difference. The Pennsylvania, 19 Wall. 125, 136 [22 L.Ed. 148]; The Frank P. Lee [D.C.], 30 F. 277, 280; The Dentz [C.C.], 29 F. [525] 526, 528."

The Pennsylvania rule was applied by the Sixth Circuit in Dorrington v. City of Detroit, 223 F. 232, where a schooner struck a drawbridge, to conduct of the city in violating a statutory mandate with regard to the operation of the bridge.

In People's Coal Co. v. Second Pool Coal Co., D.C., 181 F. 609, 611, (affirmed on appeal by the Circuit Court of Appeals for the Third Circuit, 188 F. 892) where a vessel ran upon a sunken wreck, it is said: "It is true that at law, where a duty is imposed by statute, a remedy for a private wrong is not to be read into the statute, unless the duty may have existed at common law. This is not so in admiralty. There are a number of cases which hold that actual violation of a statutory rule imposes the burden upon the violating vessel to show, not merely that her fault

might not have been one of the causes, or that it probably was not, but that it could not have been. Steamship Pennsylvania v. Troop, 19 Wall. 125, 22 L.Ed. 148; Taylor v. Harwood, Fed.Cas.No.13,794."

In The Carbonero, 106 F. 329, 335, the Circuit Court of Appeals for the First Circuit, while dealing with a case where a tugboat lost some barges which had been in her tow, indicated that if there had been a statutory fault, the rule would have been applicable. Central Vermont Ry. Co. v. Bethune, 1 Cir., 206 F. 868, 876 is to the same general effect.

This court in The Princess Sophia, 9 Cir., 61 F.2d 339, 347, stated the Pennsylvania rule and presumption applied in cases of stranding: "Failure to obey a statute does, indeed, penalize the violator. The penalty, however, is not that the violator is to be held accountable for any mishap, regardless of its relation to the violation. The rule simply is that the violator is penalized with the burden of showing that the violation not only probably did not cause the accident, but that it could not have done so. *This burden it is frequently extremely difficult, if not impossible, for the violator to discharge, in the nature of things; and therein lies the true penalty imposed upon him.*" (Italics supplied.)

In this connection we note the Supreme Court's decision that it was the intent of Congress in passing the later three-watch provision for sailors, Sec. 2 of Seaman's Act of March 4, 1915, Ch. 153, 38 Stat. 1164, 46 U.S.C.A. § 673, on a vessel, "* * * that each of the watches, like the crew as a whole, should be 'adequate in number,' competent and in a state of readiness *'for any exigency that is likely to happen'*—such as a collision, *the striking of the ship upon a reef of rocks* or an iceberg, the sudden breaking out of fire, and other happenings of like disastrous tendency—* * *." O'Hara v. Luckenbach S. S. Co., 269 U.S. 364, 370, 46 S.Ct. 157, 159, 70 L.Ed. 313.

Entirely apart from these many authorities and viewing the matter a priori, there seem to us compelling reasons why the violation of a statute to prevent loss of life and property by attempting to secure absence of fatigue from the vessel's navigators shall have the Pennsylvania rule apply in suits against the owner which con-

---

[1] See The Coventina, D.C., 52 F. 156, 158, where Judge Brown states The M. M. Chase was affirmed on appeal. It thus became the law for the Second Circuit.

sciously has violated it. We are not here dealing with the comparatively stable institutions on terra firma on which our common law was developed, but with that peculiar class of relationship of human beings and cargo afloat on a vessel, always likely to be in dangerous waters.

■ The decisions of the Supreme Court recognize this difference between laws regulating land and maritime enterprises. A violation of the law limiting the time of employment of a brakeman by working him 16 successive hours must be shown to have contributed causatively to his death. St. Louis, etc., Ry. Co. v. McWhirter, 1913, 229 U.S. 265, 281, 33 S.Ct. 858, 57 L.Ed. 1179.

The defense of the Harter Act is denied the owner sued for lost cargo if his vessel be unseaworthy, though the unseaworthiness have no causal connection with the loss. May v. Hamburg, etc., Gesellschaft, 1933, 290 U.S. 333, 350, 54 S.Ct. 162, 78 L.Ed. 348.

■ In the language of The Pennsylvania, in violations of legislation to prevent fatigue in navigators, if anywhere, "Such a rule is necessary to enforce obedience to the mandate of the statute."

B. *An owner affirmatively found to be privy to the violation cannot escape the application of the rule and presumption by compelling the injured persons to litigate their claims in a limitation proceeding.*

The Denali's owner's privity in and knowledge of the mate's navigation of the ship in violation of the safety act at the moment of her running at full speed on the charted reef are affirmatively established by the proof.

■ The Denali's owner not only failed to maintain its burden of proof in the limitation proceeding that it lacked such privity and knowledge,[2] but we have found that its regulations and long-established practice was so to violate the command of the statute. In the causal and contributing chain of events leading to the wreck, the last link was the mind and body of the navigator affected by the violation of the statute to prevent fatigue in navigation.

The situation was just as if the general manager of the corporation himself had stood on the bridge and said to the mate, "True, on my orders you have been standing 12 hour a day watches all through this voyage on which I have brought you, with your responsibility to all these human beings and cargo on board, but go ahead and navigate the ship through the heavy and unpredictable currents of this dangerous channel in the half light of this hazy morning."

■ No one would question that if libeled directly by the survivors of drowned sailors or owners of lost cargo, the ship's owner would have to meet the burden of the Pennsylvania rule.

We do not believe that Congress intended the limitation legislation to be used as a device whereby the shipowner, violating a congressional safety statute, may escape the effect of such a violation by initiating a limitation proceeding before the injured parties could have it applied to him in a libel against him. That is to say, we do not believe that the class of shipowners to be aided by the beneficent provisions of a limitation proceeding include those *affirmatively proved* to have been violating statutes to prevent fatigue in navigators at the moment of the "loss" or "destruction" or "damage" referred to in the limitation act.

The Denali cites the Second Circuit case of The North Star, 255 F. 955, 956. That case affirmatively held that the violation of the statute "had nothing whatever to do with the collision." It does not discuss the Pennsylvania rule. Also cited is the New York District Court opinion in The Suduffco, 33 F.2d 775, 776, which holds no more than that "The facts established exclude the possibility of petitioners' privity or knowledge of the manner in which the vessel was navigated or the circumstances under which she was lost."

The Denali also cites the dictum of District Judge Woolsey in The El Sol, D.C., 45 F.2d 852, 855, made after he had held affirmatively that the owner's violation had not contributed to the collision: "To preclude limitation on the ground of privity or knowledge it is not, in my opinion, sufficient merely to prove that there was a failure in equipment inspection or personnel to which the shipowner was privy or of which he had knowledge. It must be shown that the fault in equipment, inspection, or personnel actually contributed to the accident in respect of which the shipowner seeks limitation." On appeal, the Second Circuit Court of Appeals refused

[2] The Silver Palm, 9 Cir., 94 F.2d 776, 777, and cases there cited.

to accept the dictum and held that, assuming the Pennsylvania rule to apply, it affirmatively appeared that the owner's violation had not contributed to the loss. Southern Pacific Co. v. United States, 72 F.2d 212, 215.

When the question recently was presented squarely to the second circuit it held, in a decision subsequent to ours here, that where it affirmatively appears that the owner seeking limitation is privy to the violation of a manning statute, the Pennsylvania rule applies. In that case the owner was privy to failing to have two deckhands on the vessel as required by the statute, 46 U.S.C.A. §§ 222, 362, 405. In affirming a denial of the limitation by the District Court the Second Circuit held: "* * * We think the record requires a finding that Tucker knew that the tug left Buffalo short one deckhand. Being a managerial agent of the charterer Tucker's privity or knowledge is chargeable to it and deprives it of the privilege of limitation; it has not disproved its privity, which it must do to limit liability. The Rambler, 2 Cir., 290 F. 791, 792; The 84-H, 2 Cir., 296 F. 427, 432; Southern Pacific Co. v. United States, 2 Cir., 72 F.2d 212, 214. The charterer is therefore in the same position as if it had no privilege of limitation, and is liable in full if it is held that the absence of a second deckhand was a cause of the accident. Since the absence has been found, and the lack is admitted to be a statutory fault (see 46 U.S.C.A. §§ 222, 362 and 405), it is presumed that the fault is a contributory cause, and the petitioner must bear the burden of showing that it was not. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; The Albert Dumois, 177 U.S. 240, 254, 20 S.Ct. 595, 44 L.Ed. 751; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726; The Annie Faxon, 9 Cir., 75 F. 312, 319; McGill v. Michigan S. S. Co., 9 Cir., 144 F. 788, 795, certiorari denied, 203 U.S. 593, 27 S.Ct. 782, 51 L.Ed. 332; The Suffolk, 2 Cir., 258 F. 219; The Fulton, 2 Cir., 54 F.2d 467, 469; The Annie, D.C. [E.D. Va.], 261 F. 797, 799. This burden it has not met, for it is impossible to say that the other deckhand might not have been on duty instead of Costello on the morning of the collision, had there been two deckhands on board. On the ground that the tug was undermanned, that the charterer was privy to the undermanning, and that this fault may have been a contributing cause of the collision, the denial of limitation to the operating charterer is sustained." New York Marine No. 10, In re Libel and Petition of Lighterage Holding Co., 2 Cir., 109 F.2d 564, 566, decided Feb. 13, 1940.

We hold that The Denali's owner is not entitled to limit its liability or to exoneration therefrom under the Harter Act as to the claims of the United States and other appellants, and order that the case be remanded to the District Court for further proceedings consonant with this opinion and the stipulation of the parties with reference to such further proceedings.

Reversed.

MATHEWS, Circuit Judge (dissenting in part).

I adhere to the views expressed in my former dissent, The Denali, 9 Cir., 105 F.2d 413, 420. For reasons there stated, the decree should be reversed, and the case should be remanded, with directions to enter a decree limiting appellee's liability, as provided in § 4283 of the Revised Statutes, 46 U.S.C.A. § 183.