THE E. MADISON HALL.

W. E. VALLIANT & CO. v. RAYONIER, Inc.

No. 5187.

Circuit Court of Appeals, Fourth Circuit.

Feb. 3, 1944.

John H. Skeen, of Baltimore, Md. (Beeuwkes, Skeen, Oppenheimer & Frank, of Baltimore, Md., on the brief), for appellant.

George W. P. Whip, of Baltimore, Md., (Lord & Whip, of Baltimore, Md., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WYCHE, District Judge.

SOPER, District Judge.

On March 31, 1942 a few minutes before 6 a. m. on a dark rainy morning off Turkey Point in the upper Chesapeake Bay the E. Madison Hall, a motor vessel of 212 gross tons, came in collision with an unlighted wreck and both the Hall and her cargo became a total loss. A libel was filed for cargo damage against the ship and her owner, and subsequently the owner filed a petition for limitation of liability under R. S. §§ 4281–4285, 46 U.S.C.A. §§ 181–185. The District Court held the vessel at fault, denied limitation of liability and gave a decree against the vessel and her owners for $32,761.99 with interest.

The finding of fault on the part of the vessel is not seriously questioned. From midnight until five minutes before the accident, while the ship was proceeding northeasterly up the Chesapeake Bay bound for the Chesapeake and Delaware Canal, the navigation of the vessel was in charge of an able-bodied seaman who was acting as mate. On watch with him was another seaman who served as lookout. The vessel's certificate of inspection issued under the statutes, 46 U.S.C.A. §§ 222, 362 and 405, required a complement of licensed officers and crew, that included a pilot in addition to a master and first-class pilot. But there was only one pilot on board, the master himself, who was below during the watch of the mate. The ship sailed without the proper complement with the knowledge and consent of her owner.

As was the custom with vessels of the size and character of the Hall, the mate kept her, during her progress up the bay, on a course west of the ship channel headed toward the Turkey Point Light. This course took the vessel toward the wreck which was lying partly submerged in the vicinity of Turkey Point on the western edge of the ship channel. The mate was aware of the approximate location of the wreck, having seen it in a recent voyage down the bay. As the vessel approached Turkey Point the mate used the search light but was unable to locate the wreck. Nevertheless he kept the vessel at full speed of seven or eight miles per hour without change of course. Moreover, he kept the lookout in the pilot house instead of posting him on the bow 75 to 80 feet forward.

At 5:45 a. m. the captain, who had no previous knowledge of the wreck, came on deck for his watch. The mate told him that there was a wreck in the vicinity to the west side of the channel at Turkey

591

Point. In some way the captain got the idea that he had passed the wreck and after making a slight change to the easterly in the course, kept the vessel full speed ahead for five minutes when she collided with the easterly end of the wreck and foundered.

The faults of the vessel are obvious. She was without her proper complement of officers. Until a few minutes before the crash she was in charge of an able-bodied seaman when she should have been navigated by a licensed pilot. As she approached the known locality of the wreck she was kept on her course at full speed headed for the danger, although she could readily have been taken into the channel east of the wreck or at a safe distance to the west thereof. Her speed should have been reduced so long as any doubt as to the exact location of the wreck remained and the lookout should have been kept on the bow. The master himself continued to neglect these precautions when he took charge.

The owner makes no reply to this conclusive showing except to say that the government was negligent in not marking the wreck with a distinctive light, at the same time admitting that the government's neglect affords no excuse for the faulty navigation of the ship. However, it is contended that the owner is entitled to the statutory exemption since it was without privity or knowledge of the circumstances. It is admitted that another pilot should have been on board to take charge of the ship when the captain was not on watch; but it is said that the absence of the pilot did not contribute to the accident because it did not occur until the master had taken over and made a slight change in the vessel's course; or, in other words, that the navigation of the vessel by the mate between 12 p. m. and 5:45 a. m. did not contribute to the accident.

We do not think that this position can be sustained. The mate, knowing that the wreck lay in the course of the ship, kept her full speed ahead without a proper lookout on a dark and rainy morning until she was within two-thirds of a mile of the unlighted wreck. He kept her on this course although he knew that a change of course either to the east or west could be safely made so as to avoid all risk of collision. It cannot be said that a qualified pilot would not have taken one of these alternatives. On the contrary, it is quite probable that such a pilot would have done so, and that all danger of collision with the wreck would have been avoided and the vessel would have passed Turkey Point on her port side and proceeded safely in a northeasterly direction up the Elk River to the Canal. Had either course been adopted the vessel would have been out of danger when the master took charge and the collision would not have occurred.

It is established that the statutory provisions for limitation of the liability of owners of vessels should be construed liberally to effectuate the beneficial purposes of the legislation. Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291; and that limitation of liability will not be denied on the ground of the privity or knowledge of the owner unless it involves participation in some fault which caused or contributed to the injury suffered; The Virginia, D.C. Md., 264 F. 986, affirmed, 4 Cir., 278 F. 877. Accordingly, it was held in Southern Pacific Co. v. United States, 2 Cir., 72 F.2d 212, that the absence from the ship of a first assistant engineer required as part of the complement of the crew by the local inspectors did not deprive the owner of his right to limitation when the evidence showed that the defect was not a contributing cause to the collision. See, also, The North Star, 2 Cir., 255 F. 955; Hartford & New York Transportation Co. v. Rogers & Hubbard Co., 2 Cir., 47 F.2d 189.

The burden of proof, however, to establish lack of privity or knowledge rests upon the owner seeking limitation of liability. And where the owner has privity or knowledge of some violation of the statutes affecting the navigation of the ship, it is presumed under the doctrine of The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148, that the fault is at least a contributing cause to the loss; and the owner must bear the burden of showing not merely that his fault probably was not, but also that it could not have been a contributing cause of the disaster. The New York Marine No. 10, 2 Cir., 109 F.2d 564, 566; The Denali, 9 Cir., 105 F.2d 413, 420. This burden has not been borne by the owner in the pending case and the decree of the District Court must therefore be affirmed.